### Official Use Only

| Case Number | Judge | Magistrate Judge |
|---|---|---|
|  |  |  |

Case: 5:10-cv-11371
Judge: O'Meara, John Corbett
MJ: Whalen, R. Steven
Filed: 04-06-2010 At 08:26 AM
PRIS CAMPBELL V. GAUSE ET AL (DA)

## PRISONER CIVIL RIGHTS COMPLAINT

This form is for use by state prisoners filing under 42 U.S.C. § 1983 and federal prisoners filing pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

### Plaintiff's Information

| Name | Arthur L. Campbell | Prisoner No. | 185620 |
|---|---|---|---|

**Place of Confinement:** Lakeland Correctional Facility

| Street | City | State | Zip Code |
|---|---|---|---|
| 141 First Street | Coldwater | MI | 49036 |

Are there additional plaintiffs?   ☐ Yes   ☒ No

If yes, any additional plaintiffs to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. **You must provide names, prisoner numbers and addresses for all plaintiffs.**

### Defendant's Information

| Name | Cynthia Gause | Position | Asst. Resident Unit Supervisor (ARUS) |
|---|---|---|---|

| Street/P.O. Box | City | State | Zip Code |
|---|---|---|---|
| 17601 Mound Road | Detroit | MI | 48212 |

Are you suing this defendant in his/her:   ☒ Personal Capacity   ☐ Official Capacity   ☐ Both Capacities

Are you suing more than one defendant?   ☒ Yes   ☐ No

If yes, any additional defendants to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. **You must provide their names, positions, current addresses and the capacity (personal, official or both) in which you are suing them.**

(Continuation of Defendant's Information attached hereto, page 4)

1

## I. PREVIOUS LAWSUITS

Have you filed any other lawsuits in state or federal court relating to your imprisonment?

☒ Yes    ☐ No

If "Yes," complete the following section. If "No," proceed to Part II.

Please list all prior civil actions or appeals that you have filed in federal court while you have been incarcerated.

| Docket or Case Number: | 1:94-CV-769 |
|---|---|
| Name of Court: | U.S. District Court Western District of Michigan Southern Division |
| Parties (Caption or Name of Case): | Arthur L. Campbell v. Michael Esch, C/O |
| Disposition: | Jury Award |

| Docket or Case Number: | |
|---|---|
| Name of Court: | |
| Parties (Caption or Name of Case): | |
| Disposition: | |

| Docket or Case Number: | |
|---|---|
| Name of Court: | |
| Parties (Caption or Name of Case): | |
| Disposition: | |

**Any additional civil actions should be listed on a separate sheet of 8½" x 11" paper and securely attached to the back of this complaint.**

2

## II. STATEMENT OF FACTS

State here, as briefly as possible, the facts of your case. Describe how each defendant is involved. Include the names of other people, dates and places involved in the incident. Do not give any legal arguments or cite any cases or statutes. If you intend to allege several related claims, number and set forth each claim on a separate 8½" x 11" sheet of paper and securely attach the papers to the back of this complaint.

1. Prior to April 4, 2007, Plaintiff had had verbal conflicts with Defendants Resident Unit Officer (RUO) Bragg, RUO Dye and Assistant Resident Unit Supervisor (ARUS) Gause at the Mound Correctional Facility (NRF) in Detroit, Michigan. Plaintiff had criticized RUO Bragg's and ARUS Gause's actions in previous grievances he had filed against them. Getting legal mail processed was alway a source of contention between ARUS Gause and Plaintiff, too.

2. On April 4, 2007, Defendant Resident Unit Officer (RUO) Dye wrote Plaintiff a minor misconduct for having a wet coat hanging on the back of a chair in his cell.

(CONTINUATION ATTACHED HERETO)AT PAGE 5)

## III. RELIEF

State briefly and exactly what you want the Court to do for you.

A. Issue a declaratory judgment stating that:

1. The confiscation of Plaintiff's lawfully purchased religious oils by Defendants Dye, Bragg, Conyer, Gause and Powell, and the failure of Greason, Booker, and Armstrong to exercise their administrative oversight responsibilities to take corrective, disciplinary or other action violated Plaintiff's rights under the First

((Continuation of Relief Requested at Page 15)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed (signed) on _April 1, 2010_ (date).

_Arthur L. Campbell_
Signature of Plaintiff

Continuation of Defendant's Information                                Page 4


Dye, Resident Unit Officer (RUO)
17601 Mound Road
Detroit, MI  48212
sued in her Personal Capacity

Bragg, Resident Unit Officer (RUO)
17601 Mound Road
Detroit, MI  48212
Sued in his Personal Capacity

Conyer, Resident Unit Officer (RUO)
17601 Mound Road
Detroit, MI  48212
Sued in her Personal Capacity

Clarence Powell, Resident Unit Manager (RUM)
17601 Mound Road
Detroit, MI  48212
Sued in his Personal Capacity and official capacity

Raymond D. Booker, Warden
17601 Mound Road
Detroit, MI  48212
Sued in his Personal Capacity and official capacity

A. Greason, Acting Resident Unit Manager (ARUM)
17601 Mound Road
Detroit, MI  48212
Sued in his Personal Capacity and official capacity

Ducett, Property Room Officer
17601 Mound Road
Detroit, MI  48212
Sued in her Personal Capacity

Snipes, Captain
17601 Mound Road
Detroit, MI  48212
Sued in his Personal Capacity

James Armstrong, Step III Grievance Appeal Respondent
P.O. 30003
Lansing, MI  48909
Sued in his Personal Capacity and official capacity

Continuation of Defendant's Information                                    Page 5


Darrell Steward, Assistant Deputy Warden of Housing (ADW)
17601 Mound Road
Detroit, MI  48212
Sued in his Personal Capacity and official capacity

_____

Continuation of Statement of Facts


   3.  At approximately 10:00 a.m. on April 4, 2007, after returning to Unit 4A from the prison yard soaking wet from rain, Plaintiff hung his wet coat on the back of a chair in his cell.

   4.  RUO Dye told Plaintiff to hang his wet coat in his locker while making a round in Unit 4A.

   5.  When Plaintiff told RUO Dye his coat was hanging on his chair because it was wet, she told him she did care if it was wet, Plaintiff was in violation of housing unit rules and she was going to write a misconduct.

   6.  When I told RUO Dye that Assistant Resident Unit Supervisor (ARUS) Cynthia Gause would dismiss the misconduct because it was illegitimate, she replied, "we'll see about that."

   7.  At approximately 3:00 p.m. on April 4, 2007, 4A RUO Copeland reviewed the misconduct RUO Dye wrote with Plaintiff.

   8.  Plaintiff informed RUO Copeland that the misconduct was illegitimate and that it is institutionally permissible for a prisoner to hang a wet coat on his cell chair.

   9.  At Plaintiff's request, RUO Copeland brought the illegitimacy of the miscondcut to Resident Unit Manager (RUM) Clarence Powell's attention.

   10. RUO Copeland informed Plaintiff that RUM Powell conceded the misconduct was illegitimate but instructed RUO Copeland to process the illegal misconduct report anyway.

   11. On April 6, 2007, ARUS Cynthia Gause held a misconduct hearing on the illegitimate minor misconduct.

   12. For his defense, Plaintff reminded ARUS Gause that she had said during a resident unit meeting that it was permissible to hang a wet coat on a chair.

   13. Plaintiff argued that it was asinine to have to hang a wet coat in a locker with dry clothing.

14. In support of his argument Plaintiff pointed out that, per housing unit and institutional rules, prisoners are allowed to hang a wet towel and face cloth on the bed rail until dry, so why not a wet coat.

15. ARUS Gause found Plaintiff "Guilty" because he admitted his wet coat was hanging on a chair in the cell, and sanctioned Plaintiff with a counseling and Reprimand.

16. When Plaintiff questioned ARUS Gause's finding, she told him "you're a 'legal beagle,' appeal it."

17. The First time ARUS Gause referred the term "legal beagle" to Plaintiff was in 2004.

18. When Plaintiff disputed ARUS Gause's decision—during a Notice of Intent hearing—to destroy a weight belt RUO Bragg confiscated from him, ARUS Gause told Plaintiff, "You're a legal beagle, you know what to do."

19. Plaintiff filed a grievance and Plaintiff's weight belt was returned to him.

20. On April 6, 2007, Plaintiff filed an appeal of ARUS Gause's guilty finding with Assistant Deputy Warden (ADW) of Housing Darrell Stewart.

21. Plaintiff asked ADW Stewart to vacate ARUS Gauge's guilty finding and issue a memorandum informing indiscriminate staff that it is institutionally permissible for a prisoner to hang a rain soaked coat on the back of a chair in his cell.

22. Plaintiff cautioned ADW Stewart that anymore unwarranted misconducts, unit move, transfer, or use of the buddy system to harass or intimidate will be considered retaliation for exercising his First Amendment right to criticize the legality of prison officials' actions.

23. Contrary to MDOC policy ADW Stewart did not adjudicate Plaintiff's timely appeal.

24. On April 9, 2007, Plaintiff filed a Step I Grievance against RUM Powell, ARUS Gause and RUO Dye alleging he was denied due process and that they arbitrarily and capriciously abused their authority to harass, intimidate, discriminate, and retaliate against him.

25. Plaintiff cautioned the Step I grievance respondent that anymore unwarranted misconducts, unit move, transfer, or use of the buddy system to harass or intimidate him would be considered retaliation for exercising his First Amendment rights.

26. On April 12, 2007, Grievance Coordinator B. Whitfield rejected Plaintiff's Step I grievance.

27. On April 17, 2007, Plaintiff filed a step II appeal with Warden Raymond D. Booker.

28. Plaintiff asked Warden Booker to address the due process and equal protection claims he raised in his Step I grievance.

29. Plaintiff also asked Warden Booker to issue a memorandum informing indiscriminate staff that it is permissible for prisoners to hang a wet coat on a chair in their cell.

30. Plaintiff cautioned Warden Booker that anymore unwarranted misconducts, unit move, transfer, or use of the buddy system to harass or intimidate him would be considered retaliation against him for exercising his First Amendment right to criticize the legality of prison officials' actions.

31. On April 24, 2007, seven days after Plaintiff filed his Step II grievance appeal with Warden Booker, by the MDOC staffs' code of "Buddy System," Plaintiff was transferred from NRF in Detroit to the Lakeland Correctional Facility (LCF) in Coldwater without his property, hygienic necessities, and prescribed medications.

32. On information and belief, ARUS Gause, ADW Steward, and Warden Booker orchestrated Plaintiff's transfer from NRF to LCF without his property, hygienic necessities and prescribed medications to deter him from exercising his First Amendment rights.

33. On April 24, 2007, at approximately 9:00 a.m., Plaintiff was called back to Unit 4A from a law library call-out.

34. When Plaintiff walked into the Unit RUO Dye told him, "You're outta here."

35. As Plaintiff walked away from the officers' desk, Unit 4B's RUO, Conyer, who was sitting at the desk with RUO Dye, and RUO Bragg, exclaimed, "All that glitters ain't gold."

36. As Plaintiff was in his cell gathering his property RUO Bragg told him he had to have his property packed up by 10:45 a.m. count time, which gave him about one hour.

37. On information and belief, Plaintiff's abrupt transfer from NRF to LCF was highly irregular. Normally, prisoners are notified of transfers the evening before their transfer, giving them ample time (3-5 hours) to pack up their property.

38. Plaintiff packed his property by 10:45 count time and with the help of other prisoners delivered three footlockers and two duffel bags of property and his typewriter and tv to RUO's Dye, Bragg, and Conyer in the Unit 4A triage area.

39. RUO Dye and RUO Conyer took Plaintiff hypertention, cholesterol and asthma medications which he had put in a plastic bag to keep on his person so he could take his medication as needed or prescribed by medical personnel.

40. When Plaintiff argued that the prescriptions weren't expired as they claimed and asked them to call Health Care, RUO Dye and RUO Conyer gave him a direct ordered to leave the triage area.

41. The deprivation of Plaintiff's blood pressure, cholesterol, and asthma medications subjected him to chest pains, increased blood pressure, unable to treat bronchospasms, migraine headaches, dizziness, and psychological trauma and mental anguish, including depression and panic attacks.

42. On information and belief, RUO Dye and Conyer are not medical personnel and confiscated Plaintiff's medications to maliciously and sadistically to cause him harm.

43. RUO's Dye, Bragg, and Conyer would not tag and seal the three footlockers and two duffel bags of property Plaintiff delivered to them so it could transfer with him.

44. They said, "it'll catched up with you, 'one day,'" when plaintiff insisted that they tag and seal his property in his presense so it could transfer with him.

45. RUO Bragg called the Control Center and obtain approval to hold Plaintiff's property to send it later as "catch up property."

46. In the presence of RUO's Bragg and Conyer, RUO Dye told Plaintiff, "We're going to fix your 'legal beagle ass."

47. RUO Bragg gave Plaintiff a direct order to report to the transportation staging area in Building 800.

48. RUO Dye, RUO Conyers, and RUM Powell were unpacking Plaintiff's property in the triage as he left Unit 4A.

49. The transportation officers asked Plaintiff where was his property when he reported to the transportation staging area in Building 800.

50. Plaintiff told them RUO's Dye, Bragg, and Conyer would not let him bring his property with him.

51. Yard Officer Sales said RUO's Dye, Bragg and Conyer, and RUM Powell had Plaintiff property sprawled out on the floor in the in Unit 4A's triage when he took them boxes for Plaintiff's typewriter and TV.

52. On April 25, 2007, Plaintiff informed Lakeland Correctional Facility (LCF) staff, ARUS Eric Walton, that his property had not been transferred with him to LCF.

53. Plaintiff expressed concerns to ARUS Walton that Dye, Bragg, Conyer, Gause, and Powell were going to destroy and damage his property, and that he doubted he would ever see his property again.

54. On April 25, 2007, ARUS Walton e-mailed RUM Powell at Mound about the whereabouts of Plaintiff's property.

55. RUM Powell replied in an e-mail that Plaintiff's property had already been forwarded to LCF.

56. Pursuant to Michigan Department of Correction (MDOC) police, Plaintiff was suppose to receive his property 24 hours after arriving at LCF.

57. On information and belief Mound had not forwarded Plaintiff's property to LCF.

58. On information and belief, Mound Correctional Facility told ARUS Walton they were sending Plaintiff property out on April 27, 2007, and it was supposed to be picked up in Jackson.

59. On information and belief Mound staff maliciously sent Plaintiff Property to the wrong facility.

60. On April 30, 2007, Plaintiff's property still had not arrived at LCF.

61. On April 30, 2007, ARUS Walton e-mailed LCF's transportation officer Sgt. James J. Nazar about the whereabouts of Plaintiff's property.

62. On May 1, 2007, Sgt. Nazar informed ARUS Walton in an e-mail that LCF transportation staff went to Detroit on April 30, 2007, to pick up Plaintiff's property and were told by Mound staff that Plaintiff's property was picked up by RGC (Reception Guidance Center) staff.

63. On May 1, 2007, Sgt. Nazar said LCF transportation staff were trying to track down Plaintiff's property and if they can track it down LCF transportation crew would would pick it up in Jackson.

64. On information and belief, RGC staff had not pick up Plaintiff's property.

65. On May 4, 2007, LCF transportation staff track Plaintiff's property down at Jackson Cotton Facility (JCF).

66. Plaintiff was deprived of his legal and personal property, change of clothing and hygienic necessities until LCF transformation staff track it down at Jackson Cotton Facility 10 day after his transfer.

67. Plaintiff was deprived of his hypertension, asthma and cholesterol medications for several days until refilled by LCF medical staff.

68. On information and belief, RUO Dye, RUO Bragg, RUO Conyer, ARUS Gause and RUM Powell intentionally damaged and pillaged Plaintiff's property in order to carry out RUO Dye's threat that, "We're going to fix your legal beagle ass."

69. On informaiton and belief, in furtherance of RUO Dye's threat, NRF Property Room Officer Ducett and Captain Snipes, operating under the MDOC "Buddy System," sent Plaintiff property to the wrong facility (JCF) to cover-up RUO Dye's, RUO Bragg's, RUO Conyer's, ARUS Gause's and RUM Powell adverse actions.

70. On information and belief, sending Plaintiff's property to the wrong facility is an age old retaliatory tactic commonly employed by correction staff in order to lose a litigiously despised prisoner's property in the system, to deter him from continuing to engage in his First Amendment rights.

71. On information and belief, Property Room Officer Ducett and Captain Sniped, in concert with RUO Dye, RUO Bragg, ARUS Gause, ADW Steward, and Warden Booker, using the age old MDOC "Buddy System," sent Plaintiff's property to the wrong facility to deter him from continuing to engage in constitutionally protected conduct.

72. On information and belief, LCF's transportation crew had to track Plaintiff's property down at JCF in Jackson and transported it to LCF.

73. On May 4, 2007, Property Room Officer, Waffle and Plaintiff found that Plaintiff's typewriter and tv were inoperable. The casings on his TV and typewriter were broken open with screws missing.

74. A hasty glance of plaintiff's property revealed that seven one ounce bottles of fragrance religious (Muslim) oils were missing.

75. After a thorough inspection of his property back in the housing unit, Plaintiff found that his headphones and tape player were inoperable, and that his law dictionary, trial transcripts, legal papers, mirror, sunglasses, and emery boards were missing, too. Plaintiff's footlockers were damaged and his legal papers had been ransacked and discombobulated from the orderly fashion Plaintiff kept them.

76. On June 27, 2007, the Step I grievance respondent, LCF Inspector William Irvin concluded that because the 4-24-07 property receipt was signed by NRF RUO Dye, Plaintiff's property was damaged while in the care of the MDOC.

77. The 4-24-07 property receipt signed by RUO Dye did not indicate that Plaintiff's TV, typewriter, headphones, tape player and footlockers were damaged and/or inoperable.

78. The 4-24-07 property receipt signed by RUO Dye did not indicate that Plaintiff had access property or contraband religious Muslim oil, law dictionary, trial transcripts, legal papers mirror, sunglasses, and emery boards.

79. On information and belief, LCF ADW Hawkins and Inspector Irvin attempted to contact the staff at NRF, but NRF staff would not respond to to their inquiries.

80. Inspector Irvin concluded that Plaintiff should immediately file a Step II grievance appeal and request reimbursement for his damaged and missing property from the State Administrative Board.

81. Deputy Warden Bonita Hoffner concurred with Inspector Irvin's Step I findings.

82. On July 19, 2007, LCF Warden Carol Howes affirmed Deputy Warden Bonita Hoffner's and Inspector Williams Irvin's findings.

83. Warden Howes recommended Plaintiff complete the Claim Against the State of Michigan form for reimbursement she provided because Plaintiff's property was damaged and came up missing while in the sole control of staff of the Mound facility in Detroit (NRF).

84. On August 20, 2007, the Step III grievance appeal respondent, J. Armstrong affirmed Warden Carol Howes findings but he would not take corrective action against NRF staff.

85. On July 11, 2007, in response to a Step I grievance Plaintiff filed at NRF, ARUM Greason concluded that Property Room Officer Doucett sent Plaintiff property to LCF.

86. Doucett indicated that Plaintiff's property was packed, secured and sent out as catch up property, she was not aware of any of Plaintiff's property being damaged or missing.

87. According to 4A Unit staff, RUO Dye, RUO Bragg, ARUS Gause, and or RUM Powell, the property was packed by Plaintiff and sealed, and forwarded to the property room on April 24, 2007.

88. ARUM Greason concluded that Plaintiff had no evidence on the retalition allegations in his Step I grievance.

89. ADW Darrell Steward concurred with ARUM Greason's Step I grievance findings.

90. On September 20, 2007, in response to Plaintiff's Step II grievance appel, NRF Warden Raymond D. Booker affirmed ARUM Greason's and ADW Steward's findings.

91. Warden Raymond D. Booker concluded that Plaintiff's allegations regarding his minor misconduct, misconduct appeal and grievance were untimely and separate from Plaintiff retaliation claims and would not address them in his findings.

92. Warden Booker concluded that Plaintiff had a very large volume of property and was very slow about packing his property so RUO Dye and RUO Bragg ordered Plaintiff to report to the transportation staging area in Building 800 because LCF staff arrived while Plaintiff was still packing.

93. Warden Booker concluded that RUO Dye and RUO Bragg completed the packing of Plaintiff's property, rather than Plaintiff having packed his own property before being order to leave Unit 4A.

94. Warden Booker concluded that because Plaintiff's property had been in the property room for several days subsequent to his transfer to LCF, Officer Doucett and Captain Snipes sent it to JCF, rather that LCF.

95. Warden Booker concluded that Plaintiff's 7 bottles of religious oil was confiscated because they were not allowable personal property, nor religious property.

96. On information and belief, Plaintiff religious Muslim oils were lawfully purchased through the MDOC Disbursement Authorization Order Form.

97. On information and belief, Plaintiff's religious oils were not confiscated and disposed of in accordance with MDOC policy and procedures.

98. Warden Booker concluded that reimbursement for Plaintiff's damaged and missing items through the Prisoner Benefit Fund or the State Administrative Board was not possible because Plaintiff did not meet the requirements listed on the applicable operating procedures.

99. Warden Booker concluded that Plaintiff's property was damaged and came up missing after it left NRF.

100. Warden Raymond D. Booker concluded that Plaintiff alleged retaliatory transfer was not supported by any evidence.

101. Warden Raymond D. Booker concluded that Plaintiff transfer was justified and proper.

102. Warden Raymond D. Booker concluded that Plaintiff's request for disciplinary action against NRF Staff was not warranted.

103. Warden Booker concluded that Plaintiff's grievance was denied because the Department is not responsible for a prisoner's personal property.

104. On November 9, 2007, the Step III grievance respondent, J. Armstrong, affirmed Warden Booker's findings.

105. J. Armstrong would not take corrective action against NRF staff.

106. On information and belief, ARUS Cynthia Gause, RUM Clarence Powell, ARUM A. Greason, ADW Steward, Warden Raymond D. Booker and J. Armstrong, using the age old MDOC's "Buddy System," failed to properly exercise their administrative oversight responsibilities by defending the adverse action taken against Plaintiff for exercising his First Amendment rights.

107. On information and belief, the adverse actions of these Defendants were done willfully, wantonly and maliciously with the intent to harm the Plaintiff.

108. On information and belief, the Defendants retaliated against Plaintiff because he is a "legal begal" and for exercising his First Amendment right to appeal a minor misconduct and file a grievance criticizing the legality of NRF officials.

109. On information and belief, the Defendants conspired to violate Plaintiff' constitutional rights.

## Claims for Relief

110. The actions of RUO Dye in concocting an illegitimate minor misconduct infraction against Plaintiff in retaliation for Plaintiff's legal beagle prowess in which Plaintiff assisted other prisoners with grievances misconducts and lawsuits, and for prior grievances Plaintiff filed against RUO Bragg and ARUS Gause, violated Plaintiff's rights under the First and Fourteenth Amendment.

111. The actions of Defendants RUO Dye, RUO Bragg, RUO Conyer, ARUS Gause, RUM Powell and others, utilizing the MDOC's "Buddy System," violated, conspired to violate, failed to prevent a violation and corroborated or acquiescent to violation of Plaintiff's constitutional rights constitute retaliated against Plaintiff for exercising his First and Fourteenth Amendment right to appeal a minor misconduct and to file grievances criticizing the legality of prison officials' actions.

112. The actions of Defendants RUO Dye and RUO Conyer in depriving Plaintiff of his hypertension, asthma and cholesterol medication constitute deliberately indifferent to Plaintiff's serious medical needs in violation of the Eight Amendment to the United States Constitution.

113. The action of Defendants RUO Dye, RUO Bragg, RUO Conyer, ARUS Gause, RUM Powell, Officer Ducett and Captain Snipes to conspired and retaliated against Plaintiff by abruptly transferring him from NRF to LCF, causing his

Continuation of Claims for Relief                                   Page 14

property to be withheld from him for ten days, depriving him of his hygienic necessities, damaging his legal and personal property, confiscating his trial transcripts, law dictionary, religious oils and other items, to deter him from exercising his First and Fourteenth Amendment right to criticize prison officials actions, denied Plaintiff the due process of law in violation of the Fourteenth Amendment of the United State Constitution.

114. The actions of RUO Dye, RUO Bragg, RUO Conyer, ARUS Gause RUM Powell, Officer Ducett and Captain Snipes in conspiring and desiging a plan and scheme to further harass, intimidate and cause anxiety when it was stated to Plaintiff when he asked that his property be allowed to transfer with him that, "it'll catch up with you one day," and the threat that "we're going to fix your 'legal beagal ass,'" constitutes deliberate indifference in violation of Plaintiff's First and Fourteenth Amendment right to criticize prison official actions.

115. The confiscation of Plaintiff's lawfully obtained religious oils violate Plaintiff's First and Fourteenth Amendment Right to practice his religion.

116. The failure of Defendants ARUS Gause, ARUM Powell, ARUM Greason, ADW Steward, Warden Booker and J. Armstrong to exercise their administrative oversight responsibilities to take disciplinary or other action to prevent an illegitimate prison rule from being used as a backdoor means of harassment, intimidation and retaliation by RUO Dye, RUO Bragg, RUO Conyer, Officer Ducett and Captain Snipes consitututes deliberate indifference, and contributed to and proximately caused the above described violations of Plaintiff First, Eight, and Fourteenth Amendment rights.

117. The failure of Defendants ARUM Powell, ARUM Greason, ADW Steward, Warden Booker and J Armstrong to exercise their administrative oversight responsibilities to take disciplinary or other action against ARUS Gause for using an illegitimate prison rules as a backdoor means of harassment, intimidation and retaliation constitute deliberate indifference, and contributed to and proximately caused the above described violations of Planitiff's First, Eight and Fourteenth Amendment rights.

118. The failure of Defendants Warden Booker and J Armstrong to exercise their administrative oversight responsibilities to take corrective, disciplinary or other action against RUO Dye, RUO Bragg, RUO Conyer, ARUS Gause, RUM Powell, ARUM Greason, Officer Ducett, Captain Snipes and ADW Steward for allowing an illegitimate prison rules to be used as a backdoor means of harassment, intimidation and retaliation constitute deliberate indifference, and contributed to and proximately caused the above described violations of Planitiff's First, Eight and Fourteenth Amendment rights.

119. The failure of Defendant J Armstrong to exercise his administrative oversight responsibilities to take corrective, disciplinary or other action against Warden Booker for allowing an illegitimate prison rules to be used as a backdoor means of harassment, intimidation and retaliation constitute deliberate indifference, and contributed to and proximately caused the above described violations of Planitiff's First, Eight and Fourteenth Amendment rights.

Continuation of Relief Requested

Amendment and the Due Process Clause of the Fourteenth Amendment, and prohibiting Plaintiff from possessing religious oils constitute a substantial burden on ability of Plaintiff to exercise his religion under the Religious Land Use and Institutionalized Person Act.

B. Issue an injunction ordering Defendants Booker and Armstrong or their superiors or agents to:

1. Immediately arrange the replacement of Plaintiff's seven one once bottles of religious oils at the Defendants' expense.

2. Immediately desist the substantial burden on Plaintiff's ability to exercise his religion, and allow Plaintiff to purchase and possess religious oils.

C. Award compensatory damages in the following amounts:

1. $10,000 jointly and severally against Defendants Dye, Gause, Powell, Greason, Steward, Booker and Armstrong for conspiring to violate, failing to prevent a violation and corroborating or acquiescing to an illegitimate prison rule being used as a backdoor means of harassment, intimidations and retaliations.

2. $20,000 jointly and severally against Defendants Dye, Bragg, Conyer, Gause, Powell, Greason, Ducett, Snipes, Steward, Booker and Armstrong for violating, conspiring to violate, failing to prevent a violation and corroborating or acquiescing to deliberate indifference to Plaintiff's serious medical needs.

3. $50,000 jointly and severally against Defendants Dye, Bragg, Conyer, Gause, Powell, Greason, Ducett, Snipes, Booker and Armstrong violating, conspiring to violate,

failing to prevent a violation and corroborating or acquiescing to Plaintiff's retaliatory transfer, property being withheld for ten days, deprivation of hygienic necessities, damaging, destroying and confiscating legal, personal and religious property.

4. $1,000 jointly and severally against Defendants Dye, Bragg, Conyer, Gause, Powell, Greason, Ducett, Snipes, Booker and Armstrong for violating, failing to prevent a violation and corroborating or acquiescing to the deprivation of Plaintiff's right to practice his religion.

D. Award punitive damages in the following amount:

1. $50,000 each against Defendants Dye, Bragg, Conyer, Gause, Powell, Greason, Ducett, Snipes and Steward;

2. $20,000 each against Defendants Booker and Armstrong.

E. Grant a jury trial and such other relief as it may appear the Plaintiff is entitled.

Respectfully submitted,

*Arthur L. Campbell*

Arthur L. Campbell, #185620
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036

April 1, 2010

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Respectfully submitted,

*Arthur L. Campbell*

Arthur L. Campbell, #185620
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036

April 1, 2010

# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| Case No. 10-11371 | Judge: John Corbett O'Meara | Magistrate Judge: R. Steven Whalen |

**Name of 1st Listed Plaintiff/Petitioner:**
Arthur Campbell

**Name of 1st Listed Defendant/Respondent:**
Cynthia Gause

**Inmate Number:** 185620

**Additional Information:**

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036
BRANCH COUNTY

**BASIS OF JURISDICTION**
☐ 2 U.S. Government Defendant
☒ 3 Federal Question

**NATURE OF SUIT**
☐ 530 Habeas Corpus
☐ 540 Mandamus
☒ 550 Civil Rights
☐ 555 Prison Conditions

**ORIGIN**
☒ 1 Original Proceeding
☐ 5 Transferred from Another District Court
☐ Other:

**FEE STATUS**
☐ IFP *In Forma Pauperis*
☒ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1. Is this a case that has been previously dismissed?
   ☐ Yes    ☒ No
   ➢ If yes, give the following information:
   Court: _____
   Case No: _____
   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)
   ☐ Yes    ☒ No
   ➢ If yes, give the following information:
   Court: _____
   Case No: _____
   Judge: _____

MIED (Rev. 07/06) Civil Cover Sheet for Prisoner Cases