UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR CAMPBELL,

        Plaintiff,         Civil No. 10-11371
                                 District Judge John Corbett O'Meara
-v-                               Magistrate Judge R. Steven Whalen

CYNTHIA GAUSE, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is *Defendants' Motion for Summary Judgment* [Docket #22], filed July 8, 2010 by Cynthia Gause, Mark Bragg, Joslyn Conyers, Raymond Booker, Darrell Steward, Sandra Doucet, Tommy Snipes, Alan Greason and Angela Dye, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend the following:

    1. That the motion be GRANTED as to Due Process claims regarding Plaintiff's property losses.

    2. That the motion be DENIED as to Eighth Amendment claims against Defendants Conyers, Booker, and Dye.

    3. That the motion be DENIED as to First Amendment retaliation claims against Defendants Gause, Bragg, Conyers, Booker, Steward, Doucet, Snipes and Dye.

    4. That the motion be GRANTED as to Defendant Greason.

    5. That the motion be GRANTED as to claims for monetary damages against Defendants in their official capacities.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Arthur Campbell ("Plaintiff"), a Michigan Department of Corrections ("MDOC") prisoner currently housed at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan,

filed suit on April 6, 2010 pursuant to 42 U.S.C. §1983 regarding events surrounding the April, 2007 issuance of a minor misconduct ticket and transfer from the Mound Road Correctional Facility ("NFR") in Detroit to the Lakeland Correctional Facility ("LCF") in Coldwater, Michigan.

Plaintiff alleges that on April 4, 2007, Defendant Angela Dye ("Dye"), a Resident Unit Officer ("RUO"), gave him a minor misconduct ticket for leaving his wet coat on the back of the chair in his cell. *Complaint* at ¶2. Plaintiff notes that prior to the issuance of the ticket, he had engaged in verbal conflicts with Dye as well as Defendant Mark Bragg ("Bragg"), also an RUO, and Defendant Cynthia Gause ("Gause"), an Assistant Resident Unit Supervisor ("ARUS") over the handling of his legal mail. *Id.* at ¶1. He notes further that prior to April 4, 2007, he had filed grievances against Bragg and Gause. *Id.*

Plaintiff states that upon the issuance of the April 4, 2007 ticket, he told Dye that Defendant Gause would dismiss the charge, to which Dye replied "'we'll see about that.'" *Id.* at ¶6. Later the same day, non-defendant Copeland, an RUO, reviewed the charges, informing Plaintiff that he would take the matter up with Defendant Clarence Powell ("Powell"), a Resident Unit Manager ("RUM"). *Id.* at ¶9. Plaintiff alleges that Copeland later informed him that Powell conceded that the charge was bogus, but instructed Copeland to process the misconduct ticket anyway. *Id.* at ¶10. On April 6, 2007, Gause held a misconduct hearing at which Plaintiff defended himself by noting that Gause herself had stating in a previous resident unit meeting that "it was permissible to hang a wet coat on a chair." *Id.* at ¶¶11-12. Gause nonetheless found Plaintiff guilty. *Id.* at ¶15. Plaintiff verbally disputed the finding, to which Gause replied "'[y]ou're a legal beagle, appeal it.'" *Id.* at ¶¶15-16. Plaintiff notes that Gause first referred to him as a "legal beagle" in 2004 when he filed a grievance against her for the confiscation of his property, resulting in the return of the property. *Id.* at ¶¶17-19.

Plaintiff alleges that following the April 6, 2007 guilty finding, he appealed the ticket to Defendant Darrell Steward ("Steward") an Assistant Deputy Warden ("ADW"). *Id.* at ¶20. Plaintiff alleges that contrary to MDOC policy, Steward failed to adjudicate an appeal of the misconduct ticket. *Id.* at ¶23. Plaintiff alleges that on April 9, 2007, he filed a Step One administrative grievance against Powell, Gause, and Dye on the basis that they had used the misconduct procedure to "harass, intimidate, discriminate, and retaliate against him." *Id.* at ¶24. The Step One grievance was rejected on April 12, 2007. *Id.* at ¶26. Plaintiff filed a Step Two grievance on April 17, 2007 with NFR's Warden, Defendant Raymond Booker ("Booker"). *Id.* at ¶27.

Plaintiff states that on April 24, 2007, he was abruptly transferred from NFR in Detroit to LCF in Coldwater, Michigan. *Id.* ¶31. He notes that contrary to the staff members' customary practice of giving inmates one day's notice of impending transfers, he was summoned from the law library and informed by Dye that he had one hour to pack. *Id.* at ¶¶33, 37. He alleges that he was taunted by Dye, Bragg, and Defendant Joslyn Conyers ("Conyers"), another RUO, who exclaimed "[a]ll that glitters ain't gold." *Id.* at ¶35. Plaintiff alleges Dye and Conyers confiscated his prescription medicine for asthma, hypertension, and cholesterol reduction on the pretense that it had "expired." *Id.* at ¶39. He also alleges that Dye, Bragg, and Conyer refused to "tag and seal" his three footlockers and two duffel bags of property (a procedure Plaintiff alleges would have insured that the property traveled with him), telling him that his property would instead "catch[] up" with him "'one day'" at his new location. *Id.* at ¶¶43-44. He alleges that in the presence of Bragg, Conyers, and Powell, Dye informed him that they were "'going to fix [his] legal beagle ass,'" then ordered him to report to the transportation staging area. *Id.* at ¶¶46-47. Plaintiff notes that as he departed, Dye, Conyers, and Powell were unpacking his property. *Id.* at ¶48. He adds that transportation officers also questioned the fact that Plaintiff's property was not traveling with him. *Id.* at ¶51. He

-3-

alleges further that non-defendant Sales, a Yard Officer, informed him that when he took boxes to Dye, Bragg, Conyers, and Powell for the purpose of shipping Plaintiff's typewriter and television, the four Defendants had his carefully packed property "sprawled out on the floor" of the unit.

Plaintiff alleges that the day following his arrival at LCF, he expressed concerns to ARUS Eric Walton ("Walton") that Dye, Bragg, Conyers, Gause, and Powell were going to "destroy and damage" his property. *Id.* at ¶¶51-52. Walton then emailed an inquiry to NFR regarding the missing property to which Powell replied that Plaintiff's property had already been forwarded to LCF. *Id.* at ¶55. Contrary to Powell's claim that the property had already left LCF, Plaintiff alleges that "[o]n information and belief," on April 27, 2007, NFR staff deliberately sent the property to another MDOC facility rather than LCF. *Id.* at ¶¶58-59.

Plaintiff's property had not arrived as of April 30, 2007. *Id.* at ¶62. LCF transportation staff sent to NFR were told that the belongings had been picked up for delivery to Reception Guidance Center at Jackson, Michigan, another MDOC facility. *Id.* LCF transportation staff finally tracked down the property at the G. Robert Cotton Facility ("JCF") on May 4, 2007 and delivered it to LCF on the same day. *Id.* at ¶65.

Plaintiff alleges when his property arrived at LCF on May 4, his typewriter and television were "inoperable," noting that the casings on both machines had been broken open and were missing screws, and that his headphones and tape player were similarly damaged. *Id.* at ¶¶73, 75. Plaintiff alleges that a number of items were missing, including seven one-ounce bottles of religious oils, a law dictionary, trial transcripts, legal papers, a mirror, sunglasses, and emery boards. *Id.* at ¶¶74-75. He also alleges that his footlockers had been damaged and his formerly well-organized legal papers had been ransacked and left in a state of disarray. *Id.* at ¶75. In addition to being deprived of his personal hygiene items for 10 days, he states that he was deprived of his hypertension, asthma, and

-4-

cholesterol medications for several days until LCF medical staff replaced the prescriptions that had been confiscated by NFR staff. *Id. ¶*67.

Plaintiff alleges that "upon information and belief," Defendants NFR Property Officer Sandra Ducett ("Ducett") and Captain Tommy Snipes ("Snipes") were complicit in misdirecting his belongings in an effort to "deter him from continuing to engage in his First Amendment rights." *Id.* at ¶70. He alleges that Defendant Alan Greason (an NFR ARUM who rejected Plaintiff's Step One grievance regarding the abuse of his property) and Steward and Booker (affirming Greason's conclusion that NFR Defendants did not act improperly despite strong circumstantial evidence to the contrary) were also complicit in the attempts to stifle his First Amendment rights. *Id.* at ¶¶85-90. He requests monetary and injunctive relief.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

Defendants submit several arguments in favor of summary judgment. First, they contend that because Plaintiff has not alleged personal involvement in the constitutional wrongs by Greason, Booker, and Steward, these Defendants should be dismissed. Second, they argue that state, rather than constitutional law governs Plaintiff's loss of property claims. Third, Defendants argue that Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference against Dye and Conyers. Fourth, they contend that claims against Dye regarding the minor misconduct incident are dismissible. Fifth, they argue that Plaintiff's transfer did not amount to an "adverse action" necessary to sustain the retaliation claim. Citing the Prison Litigation Reform Act ("PLRA"), they argue sixth that Plaintiff's lack of physical injury bars recovery. Seventh, they contend that the

official capacity claims are barred by Eleventh Amendment immunity. Finally, they contend that they are entitled to qualified immunity in their personal capacities.[1]

### A. Lack of Personal Involvement by Booker, Greason, or Steward

Defendants argue that Plaintiff has failed to allege personal involvement by these individuals in any of the alleged constitutional violations. They contend that the Complaint's allegation that Booker and Greason failed "'to exercise their administrative oversight responsibilities to take corrective disciplinary or other action'" is insufficient to show liability by these Defendants. *Defendants' Brief* at 5 (citing *Complaint* at ¶1).

Under *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), § 1983 liability cannot generally be imposed on a theory of *respondeat superior.* Where there is an allegation of supervisory, or *respondeat superior* liability, it must be shown that the supervisory officials "actively participated in or authorized" the illegal activity. *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999). A defendant's personal involvement in unconstitutional activity is an essential element of a § 1983 claim. *Copeland v. Machulis,* 57 F.3d 476, 481 (6th Cir.1995). In addition, merely denying or responding to an administrative grievance is insufficient to support § 1983 liability. *Shehee,* 199 F.3d at 300.

#### 1. Booker

Plaintiff's allegations that Warden Booker denied a Step Two grievance five months after the transfer is insufficient, by itself, to show personal involvement. *See Shehee,* 199 F.3d at 300.

---

[1] Plaintiff's claim that the confiscation of his religious oils violated is First Amendment Free Exercise rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") is unaddressed in Defendants' motion.

Nonetheless, earlier paragraphs of the complaint state that Plaintiff was transferred just one week after presenting an April 17, 2007 Step Two grievance to Booker disputing Gause's misconduct finding. *Complaint* at ¶¶27-31.  As discussed below, Plaintiff's claim that Booker facilitated his transfer in retaliation for asserting the right to file a grievance states both a claim of personal involvement and retaliation.  *Thaddeus-X v. Blatter,* 175 F.3d 378, 399 (6th Cir.1999).

### 2. Steward

Plaintiff alleges that he appealed Gause's misconduct finding to Steward, ADW of Housing on April 6, 2007 but that Steward failed to adjudicate the appeal. *Complaint* at ¶¶20-23. Specifically, Plaintiff alleges that 1). he appealed the misconduct to Steward 2). Steward was aware of the allegedly illegitimate misconduct ticket 3). Steward failed to timely process the appeal. 4). Plaintiff was transferred within days of filing his appeal. Plaintiff's allegations, liberally construed, state that Steward acquiesced in the retaliatory transfer. Aside from the conclusory argument that he is entitled to judgment as a matter of law, Steward has provided no evidence to refute the claims against him.

### 3. Greason

The sole claim against ARUM Greason is that he denied a Step One grievance three months after Plaintiff's April, 2007 transfer. *Complaint* at ¶85. Pursuant to *Shehee,* this allegation is insufficient to show personal involvement.  *Id.,* 199 F.3d at 300. The complaint  should therefore be dismissed as to Greason.

### B. Property Loss Claims

Defendants argue next that Plaintiff's loss of property claims do not rise to the level of a constitutional claim. *Defendants' Brief* at 5-8. Citing *Hudson v. Palmer,* 468 U.S. 517, 533-36, 104

S.Ct. 3194, 82 L.Ed.2d 393 (1984), they contend that Plaintiff has failed to show or even plead that existing state remedies are inadequate. *Id.*

Plaintiff's remedy for the return, reimbursement, or repair of items destroyed during the transfer does not lie in this Court. In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that a Due Process claim would be subject to dismissal "if (1) the deprivation was unpredictable or 'random,' (2) pre-deprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property." In *Ruiz v. Fisher,* 1998 WL 661139, *5 (6th Cir.1998) (unpublished), the Sixth Circuit explained:

> To the extent that Ruiz claims either an intentional or negligent deprivation of a property interest, he has failed to state a claim. A negligent or unintentional deprivation of property is not actionable under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328 (1986). In cases involving an intentional deprivation of property, a plaintiff may not bring a § 1983 suit claiming a denial of procedural due process if adequate state remedies exist. *Hudson v. Palmer,* 468 U.S. 517, 533-36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extending *Parratt v. Taylor,* 451 U.S. 527, 543-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to intentional property deprivations). Furthermore, the plaintiff must both plead and prove that state remedies for redressing the wrong are inadequate. *Vicory v. Walton,* 721 F.2d 1062, 1065-66 (6th Cir.1983).

Likewise here, because Plaintiff cannot show that state remedies are inadequate, his property loss claims should be dismissed.

### C.  Eighth Amendment Claims Against Dye and Conyers

Defendants argue next that Dye's and Conyer's alleged confiscation of Plaintiff's hypertension, cholesterol, and asthma medicine at the time of the transfer does not rise to the level of an Eighth Amendment violation. *Defendants' Brief* at 8-10. They contend that Plaintiff's

-9-

allegation that he experienced bronchospasms, migraine headaches, dizziness, and emotional distress is insufficient to state a claim of constitutional magnitude. *Id.* at 9.

Defendants argue on a related note that Plaintiff's failure to plead physical injury as a result of the alleged events bars recovery for emotional distress under the PLRA. *Defendants' Brief* at 14-16. Citing *Davis v. District of Columbia,* 158 F.3d 1342 (D.C. Cir. 1998), they assert that Plaintiff "has neither alleged nor shown that he suffered a physical injury" as a result of his transfer. *Defendants' Brief* at 16. Because both arguments refer to the same factual allegations, they will be considered together.

### 1. Applicable Law

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). With respect to prison guards, *Estelle* stated that "deliberate indifference to serious medical needs of

prisoners constitutes unnecessary and wanton infliction of pain ... by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed ." *Estelle,* 429 U.S. at 105.

42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Numerous cases have held that under the PLRA, an Eighth Amendment deliberate indifference claim must be grounded in an actual physical injury. *See Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Claims for damages on the basis of emotional distress must be precipitated by a physical injury. *Davis, supra,* 158 F.3d at 443.

## 2. The Present Case

Contrary to Defendants' position, the knowing deprivation of prescribed medication for life threatening conditions meets both prongs of an Eight Amendment claim. *Complaint* at ¶¶39-40. For overlapping reasons, Defendants argument that Plaintiff "has neither alleged nor shown that he suffered a physical injury" is without merit.

Paragraph 41 of the Complaint states as follows:

> The deprivation of Plaintiff's blood pressure, cholesterol, and asthma medications subjected him to chest pains, increased blood pressure, unable to treat broncospasms, migraine headaches, dizziness, and psychological and mental anguish, including depression and anxiety attacks.

Plaintiff's allegation that he was intentionally deprived of his prescription drugs for several days, by itself, is more than sufficient to plead the "deliberate indifference" required for an Eighth Amendment claim. *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2002); *Estelle v. Gamble,* 429

-11-

U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See Wolfe v. Horn,* 130 F.Supp.2d 648, 652 -653 (E.D.Pa. 2001)("abrupt termination of prescribed hormonal treatments by a prison official and failure to treat . . . severe withdrawal symptoms or after-effects," could constitute deliberate indifference)(internal punctuation and citations omitted); *see also Munn v. Toney,* 433 F.3d 1087, 1089 (8th Cir. 2006)(claimant's "headaches, cramps, nosebleeds, and dizziness" caused by the failure to monitor his blood pressure qualifies as a "physical injury" under § 1997e(e)); *Baker v. Wilkinson,* 635 F.Supp.2d 514, 522 (W.D.La. 2009)(prisoner's statement that untreated "internal hernias hurt 'sometimes'" created "genuine issues of material fact as to whether he experienced a physical injury). Likewise here, Plaintiff's statement that he experienced chest pains, spiked blood pressure, broncospasms, migraine headaches, and dizziness after Defendants confiscated his prescription medicine states both a "physical injury" and the deliberate indifference required to sustain his Eighth Amendment claim.

Defendants argue that the prescription medicine in question had "expired," and as such, was properly confiscated, but offer no evidentiary support for this assertion. *Defendant's Brief* at 10. The Complaint states that at the time of confiscation, "Plaintiff argued that the prescriptions weren't expired . . . and asked [Defendants] to call Health Care," *Id.* at ¶40. Defendants, allegedly ignoring his claim that the medicine was current, instead ordered him to leave the area. *Id.* Defendants argue that Plaintiff's medicine was refilled by LCF upon his arrival later the same day, *Defendants' Brief* at 10, but again offer no evidence to show that Plaintiff received immediate refills. In contrast, the Complaint states that Plaintiff did not receive refills for "several days" following his arrival at LCF. *Complaint* at ¶67.

Aside from the fact that Plaintiff has alleged a physical injury, Defendants' reliance on *Davis, supra,* is misplaced. In *Davis,* the court found that the plaintiff's "somatic manifestations of

emotional distress" of "weight loss, appetite loss, and insomnia" following the release of medical files showing that he tested positive for human immunodeficiency virus ("HIV") was defeated by the absence of a precipitating physical injury. *Id.* at 443; 42 U.S.C. §1997e(e). In contrast here, Plaintiff alleges that "psychological and mental anguish" depression, and anxiety attacks were brought about by the physical symptoms of chest pains, spiked blood pressure, broncospasms, migraine headaches, and dizziness resulting from Defendants' confiscation of his prescriptions. Plaintiff's Eighth Amendment claims against Dye and Conners should therefore survive summary judgment.

**D. Retaliation**

Defendants argue that Plaintiff cannot show that Dye was inspired by retaliatory animus in issuing the April 4, 2007 minor misconduct ticket.[2] *Defendants' Brief* at 11-13. They contend that Gause's April 6, 2007 "guilty" finding provides legitimate, non-retaliatory reasons for Dye's actions. *Id.*; *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999).

Defendants also assert that Plaintiff cannot show that his April 24, 2007 transfer from NFR to LCF was retaliatory. *Defendants' Brief* at 13-14 They contend that Plaintiff's "lateral" transfer from one Level II facility to another did not rise to the level of an "adverse action" necessary to sustain a First Amendment retaliation claim. *Id.* (citing *Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002)).

---

[2]Defendants argue that Dye, the alleged issuer of the ticket, is entitled to dismissal, but make no argument for the dismissal of Gause, who found Plaintiff guilty of the minor misconduct charge. Moreover, the summary judgment motion is unaccompanied by affidavits by Gause (or any other Defendant) denying Plaintiff's account of events.

### 1. Applicable Law

To prevail on a First Amendment retaliation claim, a plaintiff must show he (1) "engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* at 394. *Dean v. Byerley,* 354 F.3d 540, 551 (6th Cir.2004) ( *citing Thaddeus-X ,supra,* 175 F.3d at 394-95).

### 2. The Misconduct Ticket

Contrary to Defendants' position, Plaintiff has met the elements of a First Amendment retaliation claim. Plaintiff alleges that the misconduct ticket was issued in response to grievances he had previously filed against Bragg and Gause. *Complaint* at ¶110. Plaintiff's filing of non-frivolous grievances constitutes "protected conduct." *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir.2000). Second, there is a question of fact as to whether the issuance of an allegedly non-legitimate minor misconduct ticket resulting in a written reprimand could constitute an "adverse action." "[T]he question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002)(citing *Thaddeus-X,* 175 F.3d at 398). "Thus, unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.*[3]

---

[3] *But see Plovie v. Jackson,* 2006 WL 2850579, *5 (W.D.Mich.2006)("In the opinion of the undersigned, the four minor misconduct tickets could not possibly deter a person from ordinary firmness from engaging in protected conduct such as filing grievances or lawsuits").

Third, a question a fact remains as to whether a causal connection exists between Plaintiff's assertion of his First Amendment rights and the adverse action. First, his claim that the ticket was both issued and prosecuted in retaliation for earlier grievances is supported by the allegation that Gause, finding him "guilty," challenged him to appeal her finding, referring to him pejoratively as a "legal beagle," a term she used previously when he successfully grieved her confiscation of his personal property. *Complaint* at ¶¶16-19. Second, Plaintiff pointed out at the misconduct hearing and again here that the "infraction" was deemed permissible by Gause at an earlier resident unit meeting, *Complaint* at ¶12. His account of Gause's statement at the resident unit meeting is supported by the affidavit of another NFR prisoner. *Plaintiff's Response, Docket #38* at pg. 38 of 50, ¶4. Plaintiff's claim that the guilty finding was retaliatory is also borne out by Defendants' own exhibit which shows that although Dye ticketed both Plaintiff and another prisoner for identical offenses on the same day, the other prisoner was found "not guilty." *Defendants' Exhibit D* at 4 of 4. Further, Defendants' argument that the retaliation claim is nullified by the fact that Plaintiff pled "guilty" to the infraction is unavailing. While Plaintiff admitted to the act in question (placing a wet coat on the back of a chair rather than in his locker with dry clothes) he disputed that doing so amounted to a violation of prison policy. Accordingly, Defendants cannot show as a matter of law that Dye's issuance or Gause's disposition of the ticket was non-retaliatory.

### 3. Events Surrounding the Transfer

Next, Defendants deny that Plaintiff's April 24, 2007 transfer from NFR to LCF was retaliatory. *Defendants' Brief* at 13-14. They contend that Plaintiff's "lateral" transfer from one Level II facility to another does not rise to the level of an "adverse action" necessary to sustain a First Amendment retaliation claim. *Id.* (citing *Bell, supra,* 308 F.3d at 603).

A question of fact remains as to whether the transfer was retaliatory. Plaintiff alleges the transfer, accompanied by the confiscation of his medicine and the loss and destruction of his belongings occurred subsequent to the filing of a Step Two grievance with Booker, the warden of NFR. While a transfer by itself would not constitute "adverse action," the circumstances of the transfer, *i.e.,* the destruction and or confiscation of personal and legal items in the course of the transfer; the denial of hygienic necessities and clean clothes; and the confiscation of his prescription medicine all constitute adverse action. *Bell,* 308 F.3d at 604 (citing *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986); *Green v. Johnson,* 977 F.2d 1383, 1389-91 (10th Cir.1992)(destruction of legal materials sufficient to state "adverse action"); *Hall v. Nusholtz,* 2000 WL 1679458, *2 (6th Cir. 2000)(citing *Thadeus-X* at 398)(denial of prescribed medication would "deter a person of ordinary firmness from continuing to engage in the protected conduct"); *Nelson v. Gowdy,* 2006 WL 2604679, *17 (E.D.Mich.,2006)(Lawson, J.)(citing *Bell, supra,* at 603)("damaged personal items and grievance documents," combined with other forms of harassment, could be deemed adverse action). Moreover, the fact that Plaintiff's transfer came on the heels (one week later) of his Step Two grievance to Booker regarding the misconduct ticket easily states a causal connection sufficient to survive the present motion.

### E. Immunity

#### 1. Official Capacity Claims

Defendants contend further that claims against Booker, Greason, and Steward in their official capacities are barred by Eleventh Amendment immunity.[4] *Defendants' Brief* at 16. They are correct that claims against them in their official capacities, *i.e*, in their capacity as agents of the state under

---

[4] As discussed above, I recommend that Greason be dismissed for lack of personal involvement in the alleged constitutional violations.

42 U.S.C. §1983, are subject to dismissal on the basis that "[t]he United States Supreme Court has specifically held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Price v. Caruso,* 451 F.Supp.2d 889, 902 (E.D.Mich.2006)(Friedman, J.); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). As such, Plaintiff is not entitled to monetary damages against any of these individuals in their official capacities.

In contrast, Eleventh Amendment "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). Further, even assuming that the district court finds that these Defendants are not liable for damages, official capacity claims do not falter on a defendant's lack of personal involvement. "Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245 (6th 1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Plaintiff's request for injunctive relief against Booker and Steward is not barred by Eleventh Amendment immunity.[5]

### 2. Individual Capacity Claims

Defendants also contend that they are entitled to qualified immunity in their personal capacities, arguing that Plaintiff cannot show that the issuance of the misconduct ticket or the

---

[5]The present motion does not argue for dismissal of the requests for injunctive relief which consist of 1) replacing his bottles of religious oils and 2) desisting in placing a "substantial burden on [his] ability to purchase and possess religious oils. *Complaint* at pg. 16. The religious oil request, however, construed as a property recovery claim, is barred by *Parrott, supra.* The second request, unaddressed in the current motion, will not be discussed here.

-17-

deprivation of his medicine amounts to a constitutional violation. *Defendants' Brief* at 16-18. They appear to argue alternatively that the action is barred by the fact that their actions were "objectively reasonable." *Id.* at 18 (citing *Dickerson v. McClellan,* 101 F.3d 1151, 1157-1158 (6th Cir. 1996)).

There are generally two inquiries in a qualified immunity analysis: (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). More recently, the Supreme Court reconsidered the sequential inquiry set forth in *Saucier,* concluding that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 812, 172 L.Ed.2d 565 (2009).

As discussed above, issuing a retaliatory misconduct ticket, facilitating a prison transfer in retaliation for filing a grievance, destroying or confiscating legal papers and other property, and maliciously withholding medicine for life threatening conditions state constitutional violations. Moreover, these rights were clearly established at the time of the April, 2007 events. *See Thomas v. Eby,* 481 F.3d 434, 441 (6th Cir. 2007)(issuing a misconduct ticket in retaliation for protected activity is an "adverse action"); *Siggers-El v. Barlow,* 412 F.3d 693, 703 (6th Cir. 2005)(foreseeable adverse consequences resulting from a transfer could deter an individual of ordinary firmness); *Bell, supra,* 308 F.3d at 604 -607 (Confiscation of legal papers and other property constitutes adverse action); *Farmer v. Brennan,* 511 U.S. at 834, 114 S.Ct. 1970; *Caldwell v. Moore,* 968 F.2d 595, 602 (6th Cir.1992)(Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment). As such, remaining Defendants are not entitled to qualified immunity.

### IV. CONCLUSION

For these reasons, I recommend the following:

1. That the motion [Doc. #22] be GRANTED as to Due Process claims regarding Plaintiff's property losses.

2. That the motion be DENIED as to Eighth Amendment claims against Defendants Conyers, Booker, and Dye.

3. That the motion be DENIED as to First Amendment retaliation claims against Defendants Gause, Bragg, Conyers, Booker, Steward, Doucet, Snipes and Dye.

4. That the motion be GRANTED as to Defendant Greason.

5. That the motion be GRANTED as to claims for monetary damages against Defendants in their official capacities.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: February 1, 2010

_____

### CERTIFICATE OF SERVICE

I hereby certify on February 1, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 1, 2011: **Arthur Campbell.**

s/Michael E. Lang<br>
Deputy Clerk to<br>
Magistrate Judge R. Steven Whalen<br>
(313) 234-5217