UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR CAMPBELL,

        Plaintiff,        Civil No. 10-11371
                                  District Judge John Corbett O'Meara
-v-                                Magistrate Judge R. Steven Whalen

CYNTHIA GAUSE, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant Clarence Powell's *Motion for Summary Judgment* [Doc. #26], filed July 28, 2010, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend the following:

    1. That the motion be GRANTED as to Fourteenth Amendment Due Process claims regarding Plaintiff's personal property.

    2. That the motion be GRANTED as to monetary claims against Powell in his official capacity.

    3. That the motion be DENIED as to all other claims against Defendant Powell.

### I. PROCEDURAL AND FACTUAL BACKGROUND[1]

Arthur Campbell ("Plaintiff"), a Michigan Department of Corrections ("MDOC") prisoner currently housed at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, filed suit on April 6, 2010 pursuant to 42 U.S.C. §1983 regarding events surrounding the April, 2007 issuance of a minor misconduct ticket and transfer from the Mound Road Correctional Facility ("NFR") in Detroit to the Lakeland Correctional Facility ("LCF") in Coldwater, Michigan.

Plaintiff alleges that on April 4, 2007, Defendant Angela Dye ("Dye"), a Resident Unit Officer ("RUO"), gave him a minor misconduct ticket for leaving his wet coat on the back of the

---

[1] The factual summation is identical to the one found in an earlier Recommendation regarding a summary judgment motion [Docket #22] by Defendants Cynthia Gause, Mark Bragg, Joslyn Conyers, Raymond Booker, Darrell Steward, Sandra Doucet, Tommy Snipes, Alan Greason and Angela Dye.

chair in his cell. *Complaint* at ¶2. Plaintiff notes that prior to the issuance of the ticket, he had engaged in verbal conflicts with Dye as well as Defendant Mark Bragg ("Bragg"), also an RUO, and Defendant Cynthia Gause ("Gause"), an Assistant Resident Unit Supervisor ("ARUS") over the handling of his legal mail. *Id.* at ¶1. He notes further that prior to April 4, 2007, he had filed grievances against Bragg and Gause. *Id.*

Plaintiff states that upon the issuance of the April 4, 2007 ticket, he told Dye that Defendant Gause would dismiss the charge, to which Dye replied "'we'll see about that.'" *Id.* at ¶6. Later the same day, non-defendant Copeland, an RUO, reviewed the charges, informing Plaintiff that he would take the matter up with Defendant Clarence Powell ("Powell"), a Resident Unit Manager ("RUM"). *Id.* at ¶9. Plaintiff alleges that Copeland later informed him that Powell conceded that the charge was bogus, but instructed Copeland to process the misconduct ticket anyway. *Id.* at ¶10. On April 6, 2007, Gause held a misconduct hearing at which Plaintiff defended himself by noting that Gause herself had stating in a previous resident unit meeting that "it was permissible to hang a wet coat on a chair." *Id.* at ¶¶11-12. Gause nonetheless found Plaintiff guilty. *Id.* at ¶15. Plaintiff verbally disputed the finding to which Gause replied "'[y]ou're a legal beagle, appeal it.'" *Id.* at ¶¶15-16. Plaintiff notes that Gause first referred to him as a "legal beagle" in 2004 when he filed a grievance against her for the confiscation of his property, resulting in the return of the property. *Id.* at ¶¶17-19.

Plaintiff alleges that following the April 6, 2007 guilty finding, he appealed the ticket to Defendant Darrell Steward ("Steward") an Assistant Deputy Warden ("ADW"). *Id.* at ¶20. Plaintiff alleges that contrary to MDOC policy, Steward failed to adjudicate an appeal of the misconduct ticket. *Id.* at ¶23. Plaintiff alleges that on April 9, 2007, he filed a Step One administrative grievance against Powell, Gause, and Dye on the basis that they had used the misconduct procedure to "harass, intimidate, discriminate, and retaliate against him." *Id.* at ¶24. The Step One grievance was rejected on April 12, 2007. *Id.* at ¶26. Plaintiff filed a Step Two grievance on April 17, 2007 with NFR's Warden, Defendant Raymond Booker ("Booker"). *Id.* at ¶27.

Plaintiff states that on April 24, 2007, he was abruptly transferred from NFR in Detroit to LCF in Coldwater, Michigan. *Id.* ¶31. He notes that contrary to the staff members' customary practice of giving inmates one day's notice of impending transfers, he was summoned from the law library and informed by Dye that he had one hour to pack. *Id.* at ¶¶33, 37. He alleges that he was taunted by Dye, Bragg, and Defendant Joslyn Conyers ("Conyers"), another RUO, who exclaimed "[a]ll that glitters ain't gold." *Id.* at ¶35.

Plaintiff alleges Dye and Conyers also confiscated his prescription medicine for asthma, hypertension, and cholesterol reduction on the pretense that it had "expired." *Id.* at ¶39. He also alleges that Dye, Bragg, and Conyer refused "tag and seal" his three footlockers and two duffel bags of property (a procedure Plaintiff alleges would have insured that the property traveled with him) telling him that his property would instead "catch[] up" with him "'one day'" at his new location. *Id.* at ¶¶43-44. He alleges that in the presence of Bragg and Conyers, Dye informed him that they were "'going to fix [his] legal beagle ass,'" then ordered him to report to the transportation staging area. *Id.* at ¶¶46-47. Plaintiff notes that as he departed, Dye, Conyers, and Powell were unpacking his property. *Id.* at ¶48. He adds that transportation officers, also questioned the fact that Plaintiff's property was not traveling with him. *Id.* at ¶51. He alleges further that non-defendant Sales, a Yard Officer, informed him that when he took boxes to Dye, Bragg, Conyers, and Powell for the purpose of shipping Plaintiff's typewriter and television, the four Defendants had his carefully packed property "sprawled out on the floor" of the unit.

Plaintiff alleges that the day following his arrival at LCF, he expressed concerns to ARUS Eric Walton ("Walton") that Dye, Bragg, Conyers, Gause, and Powell were going to "destroy and damage" his property. *Id.* at ¶¶51-52. Walton then emailed an inquiry to NFR regarding the missing property, to which Powell replied that Plaintiff's property had already been forwarded to LCF. *Id.* at ¶55. Contrary to Powell's claim that the property had already left LCF, Plaintiff alleges that "[o]n information and belief," on April 27, 2007, NFR staff deliberately sent the property to another MDOC facility rather than LCF. *Id.* at ¶¶58-59.

-3-

Plaintiff's property had not arrived as of April 30, 2007. *Id.* at ¶62. LCF transportation staff sent to NFR were told that the belongings had been picked up for delivery to Reception Guidance Center, a Jackson, Michigan, another MDOC facility. *Id.* LCF transportation staff finally tracked down the property at the G. Robert Cotton Facility ("JCF") on May 4, 2007 and delivered it to LCF on the same day. *Id.* at ¶65.

Plaintiff alleges when his property arrived at LCF on May 4, his typewriter and television were "inoperable," noting that the casings on both machines had been broken open and were missing screws, and that his headphones and tape player were similarly damaged. *Id.* at ¶¶73, 75. Plaintiff alleges that a number of items were missing, including seven one-ounce bottles of religious oils, a law dictionary, trial transcripts, legal papers, a mirror, sunglasses, and emery boards. *Id.* at ¶¶74-75. He also alleges that his footlockers had been damaged and his formerly well organized legal papers had been ransacked and left in a state of disarray. *Id.* at ¶75. In addition to being deprived of his personal hygiene items for 10 days, he states that he was deprived of his hypertension, asthma, and cholesterol medications for several days until LCF medical staff replaced the prescriptions that had been confiscated by NFR staff. *Id.* ¶67.

Plaintiff alleges that "upon information and belief," Defendants NFR Property Officer Sandra Ducett ("Ducett") and Captain Tommy Snipes ("Snipes") were complicit in misdirecting his belongings in an effort to "deter him from continuing to engage in his First Amendment rights." *Id.* at ¶70. He alleges that Defendant Alan Greason (an NFR ARUM who rejected Plaintiff's Step One grievance regarding the abuse of his property) and Steward and Booker (affirming Greason's conclusion that NFR Defendants did not act improperly despite strong circumstantial evidence to the contrary) were also complicit in the attempts to stifle his First Amendment rights. *Id.* at ¶¶85-90. He requests monetary and injunctive relief.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

-4-

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

Defendant Powell, incorporating the arguments set forth in an earlier summary judgment motion by Defendants Cynthia Gause, Mark Bragg, Joslyn Conyers, Raymond Booker, Darrell Steward, Sandra Doucet, Tommy Snipes, Alan Greason and Angela Dye [Doc. #22], makes four

arguments for dismissal.[2]

### A. Property Loss Claims

Defendant argues first that Plaintiff's loss of property claims do not rise to the level of a constitutional claim. *Defendant's Brief* at 2 (citing *Docket #22* at 5-8). Adopting the other Defendants' earlier reliance on *Hudson v. Palmer,* 468 U.S. 517, 533-36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), he contends that Plaintiff has failed to show or even plead that existing state remedies are inadequate. *Id.*

Pursuant to *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Plaintiff's remedy for the return, reimbursement, or repair of items destroyed during the transfer does not lie in this Court. In *Parratt,* the Supreme Court held that a Due Process claim would be subject to dismissal "if (1) the deprivation was unpredictable or 'random,' (2) pre-deprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property." *See also Ruiz v. Fisher,* 1998 WL 661139, *5 (6th Cir.1998)(citing *Hudson v. Palmer,* 468 U.S. 517, 533-36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984))("In cases involving [even] an intentional deprivation of property, a plaintiff may not bring a § 1983 suit claiming a denial of procedural due process if adequate state remedies exist"). Moreover, the plaintiff "must both plead and prove that state remedies for redressing the wrong are inadequate." *Id.*(citing *Vicory v. Walton,* 721 F.2d 1062, 1065-66 (6th Cir.1983)).

Likewise here, because Plaintiff cannot show that state remedies are inadequate, his claims pertaining exclusively to property loss should be dismissed.

### B. Physical Injury

Defendant, again incorporating the arguments found in Docket #22, argues that Plaintiff's

---

[2] Plaintiff's allegation that the confiscation of religious oils violated his First Amendment free exercise rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") are not addressed in the present motion. Accordingly, the Court declines at present to discuss the merits of those claims.

failure to plead physical injury as a result of the alleged events bars recovery for emotional distress under the PLRA. *Defendant's Brief* at 2 (citing *Docket #22* at 14-16). Defendant relies on *Davis v. District of Columbia,* 158 F.3d 1342 (D.C. Cir. 1998), asserting that Plaintiff cannot nor show a physical injury as a result of the transfer.

42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Under the PLRA, a claim for emotional damages must be grounded in an actual physical injury. 42 U.S.C. § 1997e(e); *see also Ngo,* 548 U.S. at 84, 126 S.Ct. 2378; *Davis, supra,* 158 F.3d at 443 (same).

Defendants argument that Plaintiff has failed to plead or cannot show a physical injury is without merit.

Paragraph 41 of the Complaint states as follows:

The deprivation of Plaintiff's blood pressure, cholesterol, and asthma medications subjected him to chest pains, increased blood pressure, unable to treat broncospasms, migraine headaches, dizziness, and psychological and mental anguish, including depression and anxiety attacks.

Plaintiff's allegation that he experienced the above conditions upon being deprived of his prescribed medications is sufficient to plead a physical injury under the PLRA. *See Wolfe v. Horn,* 130 F.Supp.2d 648, 652 -653 (E.D.Pa. 2001)("abrupt termination of prescribed hormonal treatments by a prison official and failure to treat . . . severe withdrawal symptoms or after-effects" constitutes a "physical injury")(internal punctuation and citations omitted); *see also Munn v. Toney,* 433 F.3d 1087, 1089 (8th Cir. 2006)(claimant's "headaches, cramps, nosebleeds, and dizziness" caused by the failure to monitor his blood pressure qualifies as a "physical injury" under § 1997e(e)); *Baker v. Wilkinson,* 635 F.Supp.2d 514, 522 (W.D.La. 2009)(prisoner's statement that untreated "internal hernias hurt 'sometimes'" created "genuine issues of material fact as to whether he experienced a physical injury). Likewise here, Plaintiff's statement that he experienced chest pains, spiked blood pressure, broncospasms, migraine headaches, and dizziness after Defendants confiscated his prescription medicine states a "physical injury."

Aside from the fact that Plaintiff has adequately pled a physical injury, Defendants' reliance on *Davis, supra,* is misplaced. In *Davis,* the court found that the plaintiff's "somatic manifestations of emotional distress" of "weight loss, appetite loss, and insomnia" following the release of medical files showing that he tested positive for human immunodeficiency virus was defeated by the absence of a precipitating physical injury. *Id.* at 443; 42 U.S.C. §1997e(e). In contrast here, Plaintiff alleges that "psychological and mental anguish," depression, and anxiety attacks were brought on by the physical symptoms of chest pains, spiked blood pressure, broncospasms, migraine headaches, and dizziness resulting from the confiscation of his prescriptions.

### C. Immunity

#### 1. Official Capacity Claims

Defendant is correct that claims against him in his official capacity, *i.e*, in his capacity as an agent of the state under 42 U.S.C. §1983, are subject to dismissal on the basis that "[t]he United States Supreme Court has specifically held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Price v. Caruso,* 451 F.Supp.2d 889, 902 (E.D.Mich.2006)(Friedman, J.); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). As such, Plaintiff is not entitled to monetary damages against Powell in his official capacity.

#### 2. Individual Capacity Claims

Defendant also contends that he is entitled to qualified immunity in his personal capacity, arguing that Plaintiff cannot show that the issuance of the misconduct ticket or the circumstances surrounding his transfer amount to constitutional violations. *Defendant's Brief* at 2 (citing *Docket #22* at 16-18). He also adopts the argument that his actions were "objectively reasonable." *Id.*; *Docket #22* at 18 (citing *Dickerson v. McClellan,* 101 F.3d 1151, 1157-1158 (6th Cir. 1996)).

There are generally two inquiries in a qualified immunity analysis: (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier*

*v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 812, 172 L.Ed.2d 565 (2009).

### 1. Constitutional Violations

Plaintiff alleges that prior to the April, 2007 issuance of the misconduct ticket and transfer that he engaged in verbal disputes with Defendants Dye, Bragg, and Gause regarding the handling of his legal mail and had previously filed grievances against Bragg and Gause. *Complaint* at ¶1.

To prevail on a First Amendment retaliation claim, a plaintiff must show he (1) "engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* at 394. *Dean v. Byerley,* 354 F.3d 540, 551 (6th Cir.2004) ( *citing Thaddeus-X ,supra,* 175 F.3d at 394-95).

> As to Powell, Plaintiff alleges as follows:
>
> Powell acknowledged that the April 4, 2007 misconduct ticket was meritless, but nonetheless instructed another staff member to process it. *Complaint* at ¶10.
>
> At the time of the transfer on April 24, 2007, Powell, along with Dye and Conyers, was seen disarranging Plaintiff's neatly packed belongings *Id.* at ¶¶48, 51.
>
> On April 25, 2007, Powell made the knowingly false statement that Plaintiff's belongings had already been shipped to LCF. *Id.* at ¶55.
>
> The property, in fact misdirected to another MDOC location, was not recovered until on May 4, 2007. *Id.* at ¶65.
>
> On May 4, 2007, the belongings, which had been neatly packed by Plaintiff, including legal papers, were found to be in disarray; the television and typewriter had been broken; and other items were missing. *Id.* at ¶¶73-75.

Thus, Plaintiff, alleging that he was retaliated against for filing grievances, has implicated Powell in both the allegedly illegitimate misconduct ticket and the retaliatory misdirection, disorganization, and destruction of his personal property.

Allegations that Powell was personally involved in both the retaliatory ticket issuance and circumstances surrounding the transfer are not subject to dismissal. First, Plaintiff's filing of non-

-9-

frivolous grievances prior to the events of April, 2007 and again after the issuance of the April 4, 2007 misconduct ticket constitutes "protected conduct."[3] *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir.2000). Second, there is a question of fact as to whether the issuance of an allegedly non-legitimate minor misconduct ticket resulting in a written reprimand could constitute an "adverse action." "[T]he question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002)(citing *Thaddeus-X,* 175 F.3d at 398). "[U]nless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.*[4]

Further, the circumstances of the transfer, *i.e.,* the destruction and or confiscation of personal, legal, and religious items and the denial of hygienic necessities and clean clothes constitutes adverse action. *Bell v. Johnson,* 308 F.3d 594, 604 (6th Cir. 2002)(citing *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986)); *Green v. Johnson,* 977 F.2d 1383, 1389-91 (10th Cir.1992)(destruction of legal materials sufficient to state "adverse action"); *Nelson v. Gowdy,* 2006 WL 2604679, *17 (E.D.Mich.,2006)(Lawson, J.)(citing *Bell,* at 603)("damaged personal items and grievance documents," combined with other forms of harassment, could be deemed adverse action).

Third, Plaintiff has pled a causal connection between filing a grievance against NRF staff members, engaging in verbal disputes regarding the handling of his legal mail, and the April 4, 2007 misconduct ticket. Likewise, given that his transfer came on the heels (one week later) of his Step Two grievance to Booker, NRF's Warden, the misconduct ticket easily meets the third prong of

---

[3] Plaintiff's claim that the misconduct ticket and guilty finding was a pretext for punishing him for exercising his First Amendment rights is also supported by the allegation that the "infraction" was deemed permissible by Gause at an earlier resident unit meeting. *Complaint* at ¶12. Plaintiff's account is supported by the affidavit of another NFR prisoner. *Plaintiff's Response, Docket #38* at pg. 38 of 50, ¶4. The allegation that the guilty finding was retaliatory is also borne out by Defendants' own exhibit which shows that although Dye ticketed both Plaintiff and another prisoner for identical offenses on the same day, the other prisoner was found "not guilty." *Defendants' Exhibit D* at 4 of 4.

[4] *But see Plovie v. Jackson,* 2006 WL 2850579, *5 (W.D.Mich.2006)("In the opinion of the undersigned, the four minor misconduct tickets could not possibly deter a person from ordinary firmness from engaging in protected conduct such as filing grievances or lawsuits").

*Thaddeus-X*. Notably, Defendant's motion is unaccompanied by affidavits or other evidence refuting the Complaint's allegations.

### 2. Clearly Established

The right to be free from retaliation in the prison setting is clearly established. *See Thomas v. Eby,* 481 F.3d 434, 441 (6th Cir. 2007)(issuing a misconduct ticket in retaliation for protected activity is an "adverse action"); *Siggers-El v. Barlow,* 412 F.3d 693, 703 (6th Cir. 2005)(foreseeable adverse consequences resulting from a transfer could deter an individual of ordinary firmness); *Bell, supra,* 308 F.3d at 604 -607 (Confiscation of legal papers and other property constitutes adverse action). As such, Powell is not entitled to qualified immunity.

### IV.  CONCLUSION

For these reasons, I recommend the following:

1. That the motion [Doc. #26] be GRANTED as to Fourteenth Amendment Due Process claims regarding Plaintiff's personal property.

2. That the motion be GRANTED as to monetary claims against Powell in his official capacity.

3. That the motion be DENIED as to all other claims against Defendant Powell.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 1, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on February 1, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 1, 2011: **Arthur Campbell.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217