UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ARTHUR CAMPBELL,

                Plaintiff,               Civil No. 10-11371
                                       District Judge John Corbett O'Meara
-v-                                 Magistrate Judge R. Steven Whalen

CYNTHIA GAUSE, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is *Defendants' Motion for Partial Summary Judgment* [Docket #50], filed

March 18, 2011 by all Defendants, which has been referred for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B).   For the reasons set forth below, I recommend that

Defendants' motion be DENIED.

> The motion for dismissal based on the three-statute of limitations for civil rights
> claims should be DENIED.

> The motion for dismissal of the conspiracy claims against remaining Defendants
> should be DENIED.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

  (The following facts are drawn directly from the my earlier Reports).

Arthur Campbell ("Plaintiff"), a Michigan Department of Corrections ("MDOC") prisoner

currently housed at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan, filed suit

on April 1, 2010 pursuant to 42 U.S.C. §1983 regarding events surrounding the April, 2007 issuance

of a minor misconduct ticket and transfer from the Mound Road Correctional Facility ("NFR") in

Detroit to the Lakeland Correctional Facility ("LCF") in Coldwater, Michigan.

Plaintiff alleges that on April 4, 2007, Defendant Angela Dye ("Dye"), a Resident Unit Officer ("RUO"), gave him a minor misconduct ticket for leaving his wet coat on the back of the chair in his cell. *Complaint* at ¶2. Plaintiff notes that prior to the issuance of the ticket, he had engaged in verbal conflicts with Dye as well as Defendant Mark Bragg ("Bragg"), also an RUO, and Defendant Cynthia Gause ("Gause"), an Assistant Resident Unit Supervisor ("ARUS") over the handling of his legal mail. *Id.* at ¶1. He notes further that prior to April 4, 2007, he had filed grievances against Bragg and Gause. *Id.*

Plaintiff states that upon the issuance of the April 4, 2007 ticket, he told Dye that Defendant Gause would dismiss the charge, to which Dye replied "'we'll see about that.'" *Id.* at ¶6. Later the same day, non-defendant Copeland, an RUO, reviewed the charges, informing Plaintiff that he would take the matter up with Defendant Clarence Powell ("Powell"), a Resident Unit Manager ("RUM"). *Id.* at ¶9. Plaintiff alleges that Copeland later informed him that Powell conceded that the charge was bogus, but instructed Copeland to process the misconduct ticket anyway. *Id.* at ¶10. On April 6, 2007, Gause held a misconduct hearing at which Plaintiff defended himself by noting that Gause herself had stating in a previous resident unit meeting that "it was permissible to hang a wet coat on a chair." *Id.* at ¶¶11-12. Gause nonetheless found Plaintiff guilty. *Id.* at ¶15. Plaintiff verbally disputed the finding, to which Gause replied "'[y]ou're a legal beagle, appeal it.'" *Id.* at ¶¶15-16. Plaintiff notes that Gause first referred to him as a "legal beagle" in 2004 when he filed a grievance against her for the confiscation of his property, resulting in the return of the property. *Id.* at ¶¶17-19.

Plaintiff alleges that following the April 6, 2007 guilty finding, he appealed the ticket to Defendant Darrell Steward ("Steward") an Assistant Deputy Warden ("ADW"). *Id.* at ¶20. Plaintiff alleges that contrary to MDOC policy, Steward failed to adjudicate an appeal of the misconduct

ticket.  *Id.* at ¶23.  Plaintiff alleges that on April 9, 2007, he filed a Step One administrative grievance against Powell, Gause, and Dye on the basis that they had used the misconduct procedure to "harass, intimidate, discriminate, and retaliate against him." *Id.* at ¶24.  The Step One grievance was rejected on April 12, 2007.  *Id.* at ¶26.  Plaintiff filed a Step Two grievance on April 17, 2007 with NFR's Warden, Defendant Raymond Booker ("Booker").  *Id.* at ¶27.

Plaintiff states that on April 24, 2007, he was abruptly transferred from NFR in Detroit to LCF in Coldwater, Michigan.  *Id.*  ¶31.  He notes that contrary to the staff members' customary practice of giving inmates one day's notice of impending transfers, he was summoned from the law library and informed by Dye that he had one hour to pack.  *Id.* at ¶¶33, 37.  He alleges that he was taunted by Dye, Bragg, and Defendant Joslyn Conyers ("Conyers"), another RUO, who exclaimed "[a]ll that glitters ain't gold." *Id.* at ¶35.  Plaintiff alleges Dye and Conyers  confiscated his prescription medicine for asthma, hypertension, and cholesterol reduction on the pretense that it had "expired." *Id.* at ¶39.  He also alleges that Dye, Bragg, and Conyer refused to "tag and seal" his three footlockers and two duffel bags of property (a procedure Plaintiff alleges would have insured that the property traveled with him), telling him that his property would instead "catch[] up" with him "'one day'" at his new location.  *Id.* at ¶¶43-44.  He alleges that in the presence of Bragg, Conyers, and Powell, Dye informed him that they were "'going to fix [his] legal beagle ass,'" then ordered him to report to the transportation staging area.  *Id.* at ¶¶46-47.  Plaintiff notes that as he departed, Dye, Conyers, and Powell were unpacking his property.  *Id.* at ¶48.  He adds that transportation officers also questioned the fact that Plaintiff's property was not traveling with him.  *Id.* at ¶51.  He alleges further that non-defendant Sales, a Yard Officer, informed him that when he took boxes to Dye, Bragg, Conyers, and Powell for the purpose of shipping Plaintiff's typewriter and television, the four Defendants had his carefully packed property "sprawled out on the floor" of the unit.

-3-

Plaintiff alleges that the day following his arrival at LCF, he expressed concerns to ARUS Eric Walton ("Walton") that Dye, Bragg, Conyers, Gause, and Powell were going to "destroy and damage" his property. *Id.* at ¶¶51-52. Walton then emailed an inquiry to NFR regarding the missing property to which Powell replied that Plaintiff's property had already been forwarded to LCF. *Id.* at ¶55. Contrary to Powell's claim that the property had already left LCF, Plaintiff alleges that "[o]n information and belief," on April 27, 2007, NFR staff deliberately sent the property to another MDOC facility rather than LCF. *Id.* at ¶¶58-59.

Plaintiff's property had not arrived as of April 30, 2007. *Id.* at ¶62. LCF transportation staff sent to NFR were told that the belongings had been picked up for delivery to Reception Guidance Center at Jackson, Michigan, another MDOC facility. *Id.* LCF transportation staff finally tracked down the property at the G. Robert Cotton Facility ("JCF") on May 4, 2007 and delivered it to LCF on the same day. *Id.* at ¶65.

Plaintiff alleges when his property arrived at LCF on May 4, his typewriter and television were "inoperable," noting that the casings on both machines had been broken open and were missing screws, and that his headphones and tape player were similarly damaged. *Id.* at ¶¶73, 75. Plaintiff alleges that a number of items were missing, including seven one-ounce bottles of religious oils, a law dictionary, trial transcripts, legal papers, a mirror, sunglasses, and emery boards. *Id.* at ¶¶74-75. He also alleges that his footlockers had been damaged and his formerly well-organized legal papers had been ransacked and left in a state of disarray. *Id.* at ¶75. In addition to being deprived of his personal hygiene items for 10 days, he states that he was deprived of his hypertension, asthma, and cholesterol medications for several days until LCF medical staff replaced the prescriptions that had been confiscated by NFR staff. *Id.* ¶67.

Plaintiff alleges that "upon information and belief," Defendants NFR Property Officer Sandra Ducett ("Ducett") and Captain Tommy Snipes ("Snipes") were complicit in misdirecting his belongings in an effort to "deter him from continuing to engage in his First Amendment rights." *Id.* at ¶70. He alleges that Defendant Alan Greason (an NFR ARUM who rejected Plaintiff's Step One grievance regarding the abuse of his property) and Steward and Booker (affirming Greason's conclusion that NFR Defendants did not act improperly despite strong circumstantial evidence to the contrary) were also complicit in the attempts to stifle his First Amendment rights. *Id.* at ¶¶85-90. He requests monetary and injunctive relief.

On February 23, 2011, the District Court dismissed Armstrong. *Dock. #46.* On March 4, 2011, the Court dismissed Greason, but denied the motion as to Eighth Amendment claims against Conyers, Booker, and Dye, and First Amendment retaliation claims against Gause, Bragg, Conyers, Booker, Steward, Doucet, Snipes and Dye. *Dock. #47.* Monetary claims against these Defendants in their official capacities were dismissed. *Id.* The same day, the Court dismissed official capacity claims and property claims against Powell, but declined to find that he was entitled to qualified immunity on the remainder of the claims. *Dock. #48.*

## II.  STANDARD OF REVIEW[1]

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

---

[1]Although the present motion is entitled a "summary judgment" motion, Defendants note in their reply that it is properly brought pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 8(a). *Reply* at 1, *Dock. #54.*

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6).  In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court,  construing the requirements of Fed.R.Civ.P. 8(a)(2),[2] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face."  *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, _U.S._, 129 S.Ct. 1937,_L.Ed.2d_ (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[3] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, 129 S.Ct. At 1949, citing *Twombley*, 550 U.S. at 555.  Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing

---

[2] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

[3] *Twombley* was an antitrust case.  *Iqbal* was a prisoner civil rights case.  In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (internal citations omitted).

### III.  ANALYSIS

#### A.  The Statute of Limitations

Defendants argue that the three-year statute of limitation for civil rights claims bars Plaintiff's claims pertaining to events predating April 7, 2007.  *Dock. #50* at 3-4 (citing *Wolfe v. Perry,* 412 F.3d 707, 713-714 (6th Cir. 2005); M.C.L. 600.5801 (10)).  Defendants, noting that the Complaint was filed in this Court on April 6, 2007, contend as such that claims related to Dye's allegedly retaliatory misconduct ticket (issued April 4, 2007) are time-barred by two days.  *Id.*

Defendant is correct that the statute of limitations for the present action is three years. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)(state personal injury statutes of limitations apply to § 1983 claims).  M.C.L. § 600.5805(10) states that in Michigan the statute of limitation for personal injury claims is three years.  This argument nonetheless fails for two reasons.  First, under the "'prison mailbox rule'. . . . a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley,* 526 F.3d 921, 925 (6th Cir. 2008)(citing *Richard v. Ray,* 290 F.3d 810, 812-813 (6th Cir. 2002)).  Plaintiff states that he handed the Complaint over to prison officials  on April 1, 2010.  *Dock. #53* at pg. 8 of 10.  Plaintiff signature on the Complaint is accompanied by a date of April 1, 2010.  *Complaint* at pg. 3 of 17.  His contention that five days lapsed between the handing of the Complaint to prison officials and the April 6, 2010 filing in this Court is entirely plausible.   For example, I note that there was a  *six* day lag between the date of his response to the present motion and its filing here. *Docket #53* at pg. 2 of 10.

Second, the statute of limitations was tolled for the period of time required for Plaintiff to exhaust his administrative remedies. Because 42 U.S.C. § 1997e(a) "unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation," the applicable statute of limitations is tolled while the prisoner pursues state remedies. *Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir.2000). The three-step grievance procedure required for Michigan Department of Corrections inmates, at a minimum, would toll Plaintiff's claim for several weeks, if not months. Defendants' argument that the claims are extinguished by the three-year statute of limitations should thus be rejected.

### B. The Conspiracy Claims

Defendants also argue that Plaintiff has failed to state a claim of "civil conspiracy." *Docket #50* at 4. Citing *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir. 2003), they contend that the "conclusory" conspiracy claims are unsupported by any factual allegations. *Id.* In response, Plaintiff argues that Defendants are bound by this Court's finding (adopted by the District Court) that claims against Conyers, Booker, Dye, Gause, Bragg, Booker, Steward, Snipes, and Powell were not subject to dismissal. *Dock. #40-41.* Plaintiff is correct in that those findings are the law of the case. However, a review of both Reports shows that while the First and Eight Amendment claims were addressed, the Court made no direct finding as to the conspiracy allegations which are interspersed throughout the Complaint. Therefore, I will discuss the conspiracy claim on its merits.

In proving a § 1983 civil conspiracy Plaintiff must show (1) "[a]n agreement between two or more persons to injure another by unlawful action," (2) participants "shared in the general conspiratorial objective," (3) "an overt act was committed in furtherance of the conspiracy" and (4) the complainant was injured as the result of the act . *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th

-8-

Cir. 2003)(citing *Hooks v. Hooks,* 771 F.2d 935 (6th Cir.1985)).  "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy." *Id.*  However,  "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity[.]   [V]ague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch,* 826 F.2d 1534, 1538-39 (6th Cir.1987).

As noted above, this Court has not made explicit findings that the remaining Defendants conspired to deprive Plaintiff of his constitutional rights.  Nonetheless, factual support for the conspiracy claim is  implicit in the earlier Report and Recommendations.  For example, by itself, Booker's approval of Plaintiff's transfer would not state a claim of conspiracy.  However, the fact that Booker facilitated the transfer  within days of Plaintiff filing Step two grievance regarding the misconduct ticket by Gause at the very least states a claim that Booker acted in concert with a least one other staff member in discouraging Plaintiff from exercising his constitutional rights.  *See Dock. #40* at 8.  Likewise, Plaintiff's allegation that he observed three Defendants (Dye, Conyers, and Powell)  tampering with his neatly packed property in retaliation for the assertion of his First Amendment rights alleges (1) an agreement, (2) a conspiratorial objective, (3) an overt act, and (4) an injury.

Defendant takes issue with paragraph 32 of the Complaint which states that "ARUS Gause, ADW Steward, and Warden Booker orchestrated Plaintiff's transfer . . . without his property, [hygienic] necessities and prescribed medications to deter him from exercising his first Amendment rights."  However, again, this Court's finding that allegations pertaining to Gause's misconduct ticket stated a claim of retaliation, coupled with Steward's failure to timely decide the appeal of the misconduct ticket, *and* the abrupt transfer approved by Booker states a plausible claim of conspiracy.  *Dock. #40* at 7-8, 15.

In closing, I note that no objections were filed to the previous Reports denying summary judgment to the remaining Defendants. The present motion is, in effect, a back-door attempt to revisit my previous R&R, which was adopted by the District Court. My previous findings rest on the allegations that over the course of one month, Plaintiff was subject to the following actions by various Defendants: He (1) received a misconduct ticket (2) was found guilty and at the same time referred to by the ARUS as a "legal begal" (3) his appeal was not timely heard (4) his transfer was processed with unusual abruptness (5) his personal property was deliberately lost/destroyed and (6) his prescription drugs were confiscated. The finding that Plaintiff stated a claim that they acted in concert to discourage him from exercising his constitutional rights is implicit in these findings. Granting the motion to dismiss the conspiracy claims would improperly disturb the earlier determination. Accordingly, I recommend that the motion to dismiss the civil conspiracy claims be denied.

## IV.  CONCLUSION

For these reasons, I recommend that Defendants motion [Doc. #50] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: August 5, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on August 5, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 5, 2011: **Arthur Campbell.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217