EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR CAMPBELL, *et al.*,

        Plaintiff,              Civil No. 10-11371
                                               District Judge John Corbett O'Meara
-v-                                            Magistrate Judge R. Steven Whalen

CYNTHIA GAUSE, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Before the Court is Defendants' Motion for Summary Judgment (*Dock. #*80), filed by Defendants Booker, Stewart, Snipes, Powell, Gause, Doucet, Bragg, Conyers, and Dye, which has been referred for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend that the motion be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE.

                             **I.     FACTS**

   Arthur Campbell ("Plaintiff"), a Michigan Department of Corrections ("MDOC") filed suit on April 1, 2010 pursuant to 42 U.S.C. §1983 regarding events surrounding the April, 2007 issuance of a minor misconduct ticket and transfer from the Mound Road Correctional Facility ("NFR") in Detroit to the Lakeland Correctional Facility ("LCF") in Coldwater, Michigan.

    Plaintiff alleges that on April 4, 2007, Defendant Angela Dye ("Dye"), a Resident Unit Officer ("RUO"), gave him a minor misconduct ticket for leaving his wet coat on

the back of the chair in his cell. *Complaint* at ¶2. Plaintiff notes that prior to the issuance of the ticket, he had engaged in verbal conflicts with Dye as well as Defendant Mark Bragg ("Bragg"), also an RUO, and Defendant Cynthia Gause ("Gause"), an Assistant Resident Unit Supervisor ("ARUS") over the handling of his legal mail. *Id.* at ¶1. He notes further that prior to April 4, 2007, he had filed grievances against Bragg and Gause. *Id.*

Plaintiff states that upon the issuance of the April 4, 2007 ticket, he told Dye that Defendant Gause would dismiss the charge, to which Dye replied "'we'll see about that.'" *Id.* at ¶6. Later the same day, non-defendant Copeland, an RUO, reviewed the charges, informing Plaintiff that he would take the matter up with Defendant Clarence Powell ("Powell"), a Resident Unit Manager ("RUM"). *Id.* at ¶9. Plaintiff alleges that Copeland later informed him that Powell conceded that the charge was bogus, but instructed Copeland to process the misconduct ticket anyway. *Id.* at ¶10. On April 6, 2007, Gause held a misconduct hearing at which Plaintiff defended himself by noting that Gause herself had stating in a previous resident unit meeting that "it was permissible to hang a wet coat on a chair." *Id.* at ¶¶11-12. Gause nonetheless found Plaintiff guilty. *Id.* at ¶15. Plaintiff verbally disputed the finding, to which Gause replied "'[y]ou're a legal beagle, appeal it.'" *Id.* at ¶¶15-16. Plaintiff notes that Gause first referred to him as a "legal beagle" in 2004 when he filed a grievance against her for the confiscation of his property, resulting in the return of the property. *Id.* at ¶¶17-19.

Plaintiff alleges that following the April 6, 2007 guilty finding, he appealed the ticket to Defendant Darrell Steward ("Steward") an Assistant Deputy Warden ("ADW"). *Id.* at

¶20. Plaintiff alleges that contrary to MDOC policy, Steward failed to adjudicate an appeal of the misconduct ticket. *Id.* at ¶23. Plaintiff alleges that on April 9, 2007, he filed a Step One administrative grievance against Powell, Gause, and Dye on the basis that they had used the misconduct procedure to "harass, intimidate, discriminate, and retaliate against him." *Id.* at ¶24. The Step One grievance was rejected on April 12, 2007. *Id.* at ¶26. Plaintiff filed a Step Two grievance on April 17, 2007 with NFR's Warden, Defendant Raymond Booker ("Booker"). *Id.* at ¶27.

Plaintiff states that on April 24, 2007, he was abruptly transferred from NFR in Detroit to LCF in Coldwater, Michigan. *Id.* ¶31. He notes that contrary to the staff members' customary practice of giving inmates one day's notice of impending transfers, he was summoned from the law library and informed by Dye that he had one hour to pack. *Id.* at ¶¶33, 37. He alleges that he was taunted by Dye, Bragg, and Defendant Joslyn Conyers ("Conyers"), another RUO, who exclaimed "[a]ll that glitters ain't gold." *Id.* at ¶35. Plaintiff alleges Dye and Conyers confiscated his prescription medicine for asthma, hypertension, and cholesterol reduction on the pretense that it had "expired." *Id.* at ¶39. He also alleges that Dye, Bragg, and Conyer refused to "tag and seal" his three footlockers and two duffel bags of property (a procedure Plaintiff alleges would have insured that the property traveled with him), telling him that his property would instead "catch[] up" with him "'one day'" at his new location. *Id.* at ¶¶43-44. He alleges that in the presence of Bragg, Conyers, and Powell, Dye informed him that they were "'going to fix [his] legal beagle ass,'" then ordered him to report to the transportation staging area. *Id.* at ¶¶46-47. Plaintiff notes that as he departed, Dye, Conyers, and Powell were

unpacking his property. *Id.* at ¶48. He adds that transportation officers also questioned the fact that Plaintiff's property was not traveling with him. *Id.* at ¶51. He alleges further that non-defendant Sales, a Yard Officer, informed him that when he took boxes to Dye, Bragg, Conyers, and Powell for the purpose of shipping Plaintiff's typewriter and television, the four Defendants had his carefully packed property "sprawled out on the floor" of the unit.

Plaintiff alleges that the day following his arrival at LCF, he expressed concerns to ARUS Eric Walton ("Walton") that Dye, Bragg, Conyers, Gause, and Powell were going to "destroy and damage" his property. *Id.* at ¶¶51-52. Walton then emailed an inquiry to NFR regarding the missing property to which Powell replied that Plaintiff's property had already been forwarded to LCF. *Id.* at ¶55. Contrary to Powell's claim that the property had already left LCF, Plaintiff alleges that "[o]n information and belief," on April 27, 2007, NFR staff deliberately sent the property to another MDOC facility rather than LCF. *Id.* at ¶¶58-59.

Plaintiff's property had not arrived as of April 30, 2007. *Id.* at ¶62. LCF transportation staff sent to NFR were told that the belongings had been picked up for delivery to Reception Guidance Center at Jackson, Michigan, another MDOC facility. *Id.* LCF transportation staff finally tracked down the property at the G. Robert Cotton Facility ("JCF") on May 4, 2007 and delivered it to LCF on the same day. *Id.* at ¶65.

Plaintiff alleges when his property arrived at LCF on May 4, his typewriter and television were "inoperable," noting that the casings on both machines had been broken open and were missing screws, and that his headphones and tape player were similarly

damaged. *Id.* at ¶¶73, 75. Plaintiff alleges that a number of items were missing, including seven one-ounce bottles of religious oils, a law dictionary, trial transcripts, legal papers, a mirror, sunglasses, and emery boards. *Id.* at ¶¶74-75. He also alleges that his footlockers had been damaged and his formerly well-organized legal papers had been ransacked and left in a state of disarray. *Id.* at ¶75. In addition to being deprived of his personal hygiene items for 10 days, he states that he was deprived of his hypertension, asthma, and cholesterol medications for several days until LCF medical staff replaced the prescriptions that had been confiscated by NFR staff. *Id.* ¶67.

Plaintiff alleges that "upon information and belief," Defendants NFR Property Officer Sandra Ducett ("Ducett") and Captain Tommy Snipes ("Snipes") were complicit in misdirecting his belongings in an effort to "deter him from continuing to engage in his First Amendment rights." *Id.* at ¶70. He alleges that Defendant Alan Greason (an NFR ARUM who rejected Plaintiff's Step One grievance regarding the abuse of his property) and Steward and Booker (affirming Greason's conclusion that NFR Defendants did not act improperly despite strong circumstantial evidence to the contrary) were also complicit in the attempts to stifle his First Amendment rights. *Id.* at ¶¶85-90. He requests monetary and injunctive relief.

On February 23, 2011, the District Court dismissed Armstrong. *Dock. #46.* On March 4, 2011, the Court dismissed Greason, but denied the motion as to Eighth Amendment claims against Conyers, Booker, and Dye, and First Amendment retaliation claims against Gause, Bragg, Conyers, Booker, Steward, Doucet, Snipes and Dye. *Dock. #47.* Monetary claims against these Defendants in their official capacities were

dismissed. *Id.* The same day, the Court dismissed official capacity claims and property claims against Powell, but declined to find that he was entitled to qualified immunity on the remainder of the claims. *Dock. #48*. On August 30, 2011, the Court denied Defendants' motion for partial summary judgment. *Dock.* #63.

Following these partial denials of summary judgment, the Court sought and obtained *pro bono* counsel for Plaintiff, and discovery ensued, including the Plaintiff's deposition and that of MDOC Transfer Coordinator Lisa Jones.

Ms. Jones testified that she was the Transfer Coordinator at NRF in April, 2007, and that she received a request for a "one on one" transfer from the Transfer Coordinator at LCF. This means that LCF had a prisoner who needed to be transferred to NRF, so NRF was asked to send a prisoner to LCF in exchange. Jones testified that she made the decision to transfer the Plaintiff, and that no other MDOC official or employee asked her or ordered her to do so. She stated that there were no "priority transfers" at the time, that is, inmates whose transfers were required by security or other reasons. She said that she chose Plaintiff from a list of inmates who had requested transfers to LCF, and his was the oldest of such transfer requests. *Defendants' Exhibit F, Jones Deposition*, pp. 20-37.

Although Plaintiff alleged in his complaint that when he was transferred, he was denied his medication for 10 days, at his deposition he testified that when he arrived at LCF, the intake nurse noted that he needed his medications, and ordered replacement medications. *Defendants' Exhibit D, Plaintiff's Deposition*, p. 82, 98-99. This was borne out by Plaintiff's medical file. *Id*. Plaintiff also testified that although he did not have his personal toiletries when he arrived at LCF, he was given a "care package" containing

soap, toilet paper, etc., such that he was not deprived of these necessary items for 10 days, as he had alleged in his complaint. *Id*., pp. 109-111.

Defendant Doucet testified that although she had no specific memory of Plaintiff, she would never and had never intentionally sent an inmate's property to the wrong institution or intentionally damaged the property. She said that sometimes property was sent to the wrong location or damaged accidentally. *Defendants' Exhibit G*, *Doucet Deposition*, pp. 4-10.

Defendant Bragg said that the decision to transfer Plaintiff was made "above my pay scale." *Defendants' Exhibit 10, Bragg Deposition*, p. 7. He said that the Plaintiff had excess property, that it was taken to a storage area for later transport, and that he wasn't aware of what happened to the property after that. *Id*., p. 10-12. He denied ever telling Plaintiff that he was going to "fix his legal beagle ass." *Id*., p. 12.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   **DISCUSSION**

Before discussing the individual claims against the specific Defendants, I note that my previous R&Rs denying summary judgment and/or dismissal under Fed.R.Civ.P. 12(b)(6) were entered before any discovery was taken. Following the denial of those motions, *pro bono* counsel was appointed, and discovery was completed, including testimony of the

Plaintiff that flatly contradicted some of the allegations in his complaint. I also note that Plaintiff has neither filed a response to the present motion nor submitted opposing affidavits.[1] Because the prior motions were, in effect, Rule 12(b)(6) motions, this Court is not precluded from revisiting the issues under Rule 56, in light of the subsequent discovery.

### A. Retaliation

To prevail on a First Amendment retaliation claim, a plaintiff must show he (1) "engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* at 394. *Dean v. Byerley,* 354 F.3d 540, 551 (6th Cir.2004) ( citing *Thaddeus-X ,supra,* 175 F.3d at 394-95).

Assuming that Plaintiff meets the first two elements of a retaliation claim, he has failed to show a connection between his transfer to LCF and any action taken by the Defendants. He has offered nothing to rebut the testimony of Lisa Jones that it was she, on receiving a request from the Transfer Coordinator at LCF, who made the decision to transfer the Plaintiff. And she made that decision not because any Defendant ordered her to do so, or for any retaliatory reason, *but because the Plaintiff himself had requested the transfer*.

---

[1] On July 17, 2013, I denied counsel's motion to withdraw. *Dock. # 85*.

Similarly, Plaintiff has not shown that any of the Defendants were personally involved in his transfer. The Plaintiff in a § 1983 case must clearly show that a named defendant was personally involved in the allegations underlying the Complaint. *Rizzo v. Goode,* 423 U.S. 362, 96 (1976); *Bellamy v. Bradley,* 729 F.2d 416 (6th Cir.1984). Moreover, supervisory liability under § 1983 (for example, for Warden Booker) is precluded even if the supervising entity is aware of improper activity of its subordinates and fails to act; it must be shown that the supervisory officials "actively participated in or authorized" the illegal activity. *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999).[2]

Nor has Plaintiff offered his own affidavits, or presented any evidence rebutting the Defendants' testimony that they did not intentionally misdirect or damage his property, much less that they did so in retaliation for his having filed a grievance.

The retaliation claim must therefore be dismissed against all Defendants.

### B. Eighth Amendment

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2002). Under the objective component, "the plaintiff must allege

---

[2] Claims based on Defendants Booker and Steward allegedly denying or not responding properly to grievances are not actionable under § 1983. *Shehee v. Lutrell.*

that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). With respect to prison guards, *Estelle* stated that "deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain ... by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed ." *Estelle,* 429 U.S. at 105.

I previously recommended denying the dismissal of Plaintiff's Eighth Amendment claim based on his allegation that he was deprived of essential medication for 10 days after he was transferred to LCF. We now see that this claim is factually incorrect. Upon being shown MDOC medical records, Plaintiff conceded at his deposition that when he was transferred, the intake nurse ordered new medications for him. He was not deprived of those medications for 10 days. Nor was he deprived of toiletries, since he was given a "care package" that contained the necessary hygienic product. Plaintiff's Eighth Amendment claim must be dismissed.

### C. Conspiracy

To prove a § 1983 civil conspiracy Plaintiff must show (1) "[a]n agreement between two or more persons to injure another by unlawful action," (2) participants "shared in the general conspiratorial objective," (3) "an overt act was committed in furtherance of the

conspiracy" and (4) the complainant was injured as the result of the act . *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir. 2003)(citing *Hooks v. Hooks,* 771 F.2d 935 (6th Cir.1985)). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy." *Id.* However, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity[.] [V]ague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch,* 826 F.2d 1534, 1538-39 (6th Cir.1987).

The discovery that has taken place following my previous R&Rs shows that Plaintiff's conspiracy claim rests on speculation, not fact. Contrary to Plaintiff's allegation, Warden Booker did not coordinate his transfer; the unrebutted testimony of Transfer Coordinator Jones shows that it was she, and she alone who made the decision to transfer Plaintiff to LRF, and that the decision was based on Plaintiff's own request. Nor has Plaintiff rebutted the testimony that there was no intentional misdirection or damage of his property. The conspiracy claim is not supported by material facts, and must be dismissed.

## IV.   CONCLUSION

In response to this motion, the Plaintiff has not shown specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). On these facts, no rational trier of fact could find in favor of the Plaintiff on any of his claims against any of these Defendants. Therefore, I recommend that Defendants' Motion for Summary Judgment (*Dock. #*80) motion be GRANTED, and that the complaint be

DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 11, 2014        s/R. Steven Whalen
                                UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 11, 2014, electronically and/or by U.S. Mail.

                                          s/Michael Williams
                                          Case Manager to the
                                          Honorable R. Steven Whalen