UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR CAMPBELL, *et al.*,

                Plaintiff,          Civil No. 10-11371
                                        District Judge John Corbett O'Meara
-v-                                 Magistrate Judge R. Steven Whalen

CYNTHIA GAUSE, et al.,

                Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a prisoner civil rights case, brought under 42 U.S.C. § 1983. It has a long procedural history. Following a remand by the Sixth Circuit, there remain claims of retaliation (First Amendment) and deliberate indifference to medical conditions (Eighth Amendment). Before the Court is Michigan Department of Correction ("MDOC") Defendants' Motion for Summary Judgment by Cynthia Gause, Angela Dye, Mark Bragg, Joslyn Conyers, Clarence Powell, Raymond Booker, Sandra Doucet, Tommy Snipes, and Darrell Steward [Doc. #123] which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED.

-1-

# I.   BACKGROUND

Arthur Campbell ("Plaintiff"), currently represented by counsel, is an MDOC prisoner currently housed at the Thumb Correctional Facility in Lapeer, Michigan.  He filed suit on April 1, 2010 pursuant to 42 U.S.C. §1983 regarding events surrounding the April, 2007 issuance of a minor misconduct ticket and transfer from the Mound Road Correctional Facility ("NFR") in Detroit to the Lakeland Correctional Facility ("LCF") in Coldwater, Michigan.

Plaintiff alleges that on April 4, 2007, Defendant Angela Dye ("Dye"), a Resident Unit Officer ("RUO"), gave him a minor misconduct ticket for leaving his wet coat on the back of the chair in his cell.  *Complaint* at ¶2.  Plaintiff notes that prior to the issuance of the ticket, he had engaged in verbal conflicts with Dye as well as Defendant Mark Bragg ("Bragg"), also an RUO, and Defendant Cynthia Gause ("Gause"), an Assistant Resident Unit Supervisor ("ARUS") over the handling of his legal mail.  *Id.* at ¶1.  He notes further that prior to April 4, 2007, he had filed grievances against Bragg and Gause.  *Id.*

Plaintiff states that upon the issuance of the April 4, 2007 ticket, he told Dye that Defendant Gause would dismiss the charge, to which Dye replied "'we'll see about that.'"  *Id.* at ¶6.  Later the same day, non-defendant Copeland, an RUO, reviewed the charges, informing Plaintiff that he would take the matter up with Defendant Clarence Powell ("Powell"), a Resident Unit Manager ("RUM").  *Id.* at ¶9.  Plaintiff alleges that Copeland later informed him that Powell conceded that the charge was bogus, but instructed Copeland

to process the misconduct ticket anyway. *Id.* at ¶10.   On April 6, 2007, Gause held a misconduct hearing at which Plaintiff defended himself by noting that Gause herself had stating in a previous resident unit meeting that "it was permissible to hang a wet coat on a chair." *Id.* at ¶¶11-12.  Gause nonetheless found Plaintiff guilty. *Id.* at ¶15.  Plaintiff verbally disputed the finding to which Gause replied "'[y]ou're a legal beagle, appeal it.'" *Id.* at ¶¶15-16.   Plaintiff notes that Gause first referred to him as a "legal beagle" in 2004 when he filed a grievance against her for the confiscation of his property, resulting in the return of the property.  *Id.* at ¶¶17-19.

Plaintiff alleges that following the April 6, 2007 guilty finding, he appealed the ticket to Defendant Darrell Steward ("Steward"), an Assistant Deputy Warden ("ADW").  *Id.* at ¶20.  Plaintiff alleges that contrary to MDOC policy, Steward failed to adjudicate an appeal of the misconduct ticket.  *Id.* at ¶23.  Plaintiff alleges that on April 9, 2007, he filed a Step One administrative grievance against Powell, Gause, and Dye on the basis that they had used the misconduct procedure to "harass, intimidate, discriminate, and retaliate against him." *Id.* at ¶24.  The Step One grievance was rejected on April 12, 2007.  *Id.* at ¶26.  Plaintiff filed a Step Two grievance on April 17, 2007 with NFR's Warden, Defendant Raymond Booker ("Booker").  *Id.* at ¶27.

Plaintiff states that on April 24, 2007, he was abruptly transferred from NFR in Detroit to LCF in Coldwater, Michigan.  *Id.*  ¶31.  He notes that contrary to the staff members' customary practice of giving inmates one day's notice of impending transfers, he

-3-

was summoned from the law library and informed by Dye that he had one hour to pack. *Id.* at ¶¶33, 37. He alleges that he was taunted by Dye, Bragg, and Defendant Joslyn Conyers ("Conyers"), another RUO, who exclaimed "[a]ll that glitters ain't gold." *Id.* at ¶35.

Plaintiff alleges Dye and Conyers also confiscated his prescription medicine for asthma, hypertension, and cholesterol reduction on the pretense that it had "expired." *Id.* at ¶39. He also alleges that Dye, Bragg, and Conyer refused to "tag and seal" his three footlockers and two duffel bags of property (a procedure Plaintiff alleges would have insured that the property traveled with him), telling him that his property would instead "catch[] up" with him "'one day'" at his new location. *Id.* at ¶¶43-44. He alleges that in the presence of Bragg and Conyers, Dye informed him that they were "'going to fix [his] legal beagle ass,'" then ordered him to report to the transportation staging area. *Id.* at ¶¶46-47. Plaintiff notes that as he departed, Dye, Conyers, and Powell were unpacking his property. *Id.* at ¶48. He adds that non-defendant transportation officers, also questioned the fact that Plaintiff's property was not traveling with him. *Id.* at ¶51. Plaintiff alleges further that non-defendant Sales, a Yard Officer, informed him that when he took boxes to Dye, Bragg, Conyers, and Powell for the purpose of shipping Plaintiff's typewriter and television, the four Defendants had the previously carefully packed property "sprawled out on the floor" of the unit.

Plaintiff alleges that the day following his arrival at LCF, he expressed concern to ARUS Eric Walton ("Walton") that Dye, Bragg, Conyers, Gause, and Powell were going to "destroy and damage" his property. *Id.* at ¶¶51-52. Walton then emailed an inquiry to NFR

regarding the missing property, to which Powell replied that Plaintiff's property had already been forwarded to LCF. *Id.* at ¶55. Contrary to Powell's claim that the property had already left LCF, Plaintiff alleges that "[o]n information and belief," on April 27, 2007, NFR staff deliberately sent the property to another MDOC facility rather than LCF. *Id.* at ¶¶58-59.

Plaintiff's property had not arrived as of April 30, 2007. *Id.* at ¶62. LCF transportation staff sent to NFR were told that the belongings had been picked up for delivery to the Reception Guidance Center in Jackson, Michigan, another MDOC facility. *Id.* LCF transportation staff finally tracked down the property at the G. Robert Cotton Facility ("JCF") on May 4, 2007 and delivered it to LCF on the same day. *Id.* at ¶65.

Plaintiff alleges when his property arrived at LCF on May 4, his typewriter and television were "inoperable," noting that the casings on both machines had been broken open and were missing screws, and that his headphones and tape player were similarly damaged. *Id.* at ¶¶73, 75. Plaintiff alleges that a number of items were missing, including seven one-ounce bottles of religious oil, a law dictionary, trial transcripts, legal papers, a mirror, sunglasses, and emery boards. *Id.* at ¶¶74-75. He also alleges that his footlockers had been damaged and his formerly well organized legal papers had been ransacked and left in a state of disarray. *Id.* at ¶75. In addition to being deprived of his personal hygiene items for 10 days, he states that he was deprived of his hypertension, asthma, and cholesterol medications for several days until LCF medical staff replaced the prescriptions that had been confiscated by NFR staff. *Id.* ¶67.

Plaintiff alleges that "upon information and belief," Defendants NFR Property Officer Sandra Ducett ("Ducett") and Captain Tommy Snipes ("Snipes") were responsible for misdirecting his belongings in an effort to "deter him from continuing to engage in his First Amendment rights." *Id.* at ¶70. He alleges that Defendant Alan Greason (an NFR ARUM who rejected Plaintiff's Step One grievance regarding the abuse of his property) and Steward and Booker (affirming Greason's conclusion that NFR Defendants did not act improperly despite strong circumstantial evidence to the contrary) were also complicit in the attempts to stifle his First Amendment rights. *Id.* at ¶¶85-90. He requests monetary and injunctive relief.

On March 4, 2011, the District Court adopted my recommendation that Defendants' earlier motions for summary judgment be denied as to Eighth Amendment claims against Defendants Conyers, Booker, and Dye; denied as to First Amendment retaliation claims against Defendants Gause, Bragg, Conyers, Booker, Steward, Doucet, Snipes and Dye; granted as to Defendant Greason; and granted as to claims for monetary damages against all Defendants in their official capacities. *Docket #40, 47.* As to Defendant Powell's separate motion for summary judgment, the District Court adopted my recommendation that Powell's motion be granted as to Fourteenth Amendment Due Process claims regarding Plaintiff's personal property, granted as to monetary claims against Powell in his official capacity, and denied as to all other claims. *Docket #41, 48.*

On March 18, 2011, Defendants Booker, Bragg, Conyers, Ducett, Dye, Cynthia

Gause, Clarence Powell, Snipes, and Darrell Steward filed a renewed motion for summary judgment. *Docket #50.* On August 30, 2011, the District Court adopted my recommendation to deny the motion for summary judgment based on the three-year statute of limitations for civil rights and the conspiracy claims against remaining Defendants. *Docket#60, 63.*

Following discovery, Defendants Booker, Bragg, Conyers, Ducett, Dye, Cynthia Gause, Clarence Powell, Snipes, and Darrell Steward filed a renewed motion for summary judgment on July 8, 2013. *Docket #80.* Plaintiff did not file a response. On March 5, 2013, the District Court adopted my recommendation to dismiss the remaining claims against all Defendants. *Docket #87, 90.*

On December 18, 2014, the Sixth Circuit Court of Appeals affirmed the District Court's judgment in part and vacated in part, remanding the case for further proceedings. *Docket #101.* The Sixth Circuit upheld the dismissal of Defendant Greason and the dismissal of the claims for monetary damages against Defendants in their official capacities. *Id.* at 6. The Court upheld the finding that the temporary deprivation of personal hygiene products upon transfer did not amount to a constitutional violation. *Id.* at 10. However, noting that Plaintiff's attorney at the time failed to file a response to the motion for summary judgment, the Court considered evidence submitted for the first time on appeal, holding that the district court prematurely granted summary judgment to Defendants on the retaliation claims based on the allegedly bogus minor misconduct ticket, the transfer to LCF, and the Defendants' conspiracy regarding the "misdirection and damage" to the personal property. *Id.* at 7-9.

-7-

The Court reversed the District Court's finding that the temporary deprivation of Plaintiff's medicine upon transfer did not create a question of fact as to whether his Eighth Amendment rights were violated. *Id.* at 10.

Defendants filed the present motion on March 31, 2016. *#123.*

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary

judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.   DISCUSSION

### A.  The Retaliatory Transfer Claim

Defendants argue first that "lateral transfer" to LCF did not constitute an "adverse action" as required for a First Amendment retaliation claim. *Defendants' Brief* at 4, *Docket #123,* Pg. ID 944 (*citing Siggers-El v. Barlow,* 412 F.3d 693, 701 (6th Cir. 2005).   In response, Plaintiff points out that he was transferred on the same day Defendant Booker denied a Step Two grievance, arguing that the transfer resulted in the misdirection and mishandling of his property and the deprivation of his prescribed medicine. *Response,* 24, *Docket #129,* Pg. ID 1027.   Plaintiff argues that the events, considered in their entirety,

qualify as "adverse action."

In *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999), the Sixth Circuit held

that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct;

(2) an adverse action was taken against the plaintiff that would deter a person of ordinary

firmness from continuing to engage in that conduct; and (3) there is a causal connection

between elements one and two-that is, the adverse action was motivated at least in part by

the plaintiff's protected conduct."

Defendants do not dispute that Plaintiff's appeal of his minor misconduct ticket and

filing of a grievance constitutes protected activity. *Bounds v. Smith*, 430 U.S. 817, 828, 97

S.Ct. 1491, 52 L.Ed.2d 72 (1977)(prisoners have the fundamental right of access to the courts

to petition for the redress of grievances). However, they contend that Plaintiff's lateral

transfer to another facility of the same security level as NFR does not qualify as an "adverse

action" to meet the second requirement of *Thaddeus-X*.

To be sure, a transfer to a lateral institution, standing alone, does not qualify as an

adverse action, even where the plaintiff alleges that he was transferred for petitioning the

court for redress and giving other inmates legal assistance. *Ward v. Dyke*, 58 F.3d 271,

274–75 (6th Cir. 1995)(*citing Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d

466 (1976)). However, as alleged by Plaintiff, Defendants used the transfer as a means to

destroy and mishandle his property in retaliation for his legal activities and withhold

prescribed medication, which as discussed below, constitutes adverse actions.

-10-

The Sixth Circuit found that the evidence created a question of fact as to whether the transfer, considered in the context of Defendants' other actions, constitutes an adverse action. The Court cited the deposition testimony of Lisa Jones, NFR's transfer coordinator. *Docket #101* at 7. The Court noted that although she testified that the transfer was last-minute and that Plaintiff had "probably" been selected for transfer from a number of inmates requesting transfers, her testimony was unsupported by a kite by Plaintiff requesting a transfer. *Docket #101* at 7. Upon appeal, Plaintiff stated that he had not requested a transfer. *Id.* at 8. Plaintiff also provided a document showing Defendant Powell participated in approving the transfer by approving the removal of a medical hold preventing transfer a full four days before the April 24, 2007 transfer. *Id.*; *Docket #129-12,* Pg ID 1130. The Sixth Circuit characterized the evidence contradicting Defendants' position as "potential material factual disputes." *Id.*

A question of fact also exists as to whether a causal connection can be established between the protected activity and Defendants' conduct. Standing alone, Plaintiff's April 9, 2007 grievance against Powell, Gause, and Dye, and the April 24 transfer implies a causal connection. At the time of transfer, Dye, accompanied by Defendants Bragg and Conyers, stated that she would "fix [his] legal beagle ass," then confiscated his medicine, unpacked his carefully packed  belongings, and implied that his belongings would be deliberately misdirected. Although Dye denied that she was involved in the packing of Plaintiff's belongings, the Sixth Circuit cited evidence, first presented upon appeal, showing that Dye

was the "packing officer" in charge of preparing Plaintiff's belongings for transfer. *Id.* at 9; *Docket #129-17,* Pg. ID 1169. As such, a question of fact remains as to whether Defendants retaliated against Plaintiff for the exercise of his First Amendment rights.

### B.  The Retaliation Claim as to the Misdirection and Destruction of Property

Defendants argue that Plaintiff has failed to support his claim that his property was deliberately misdirected or destroyed. *Defendants' Brief* at 6. They contend that "it is not uncommon for property to get delayed, or even damaged, when a prisoner transfers." *Id.* (*citing #80-8*). They argue that in regard to the destruction of property claim, Plaintiff cannot meet the second or third prong of a First Amendment retaliation claim. *Id.* at 6-7. In response, Plaintiff points out first that the fact that items are misdirected and destroyed at the time of transfer strengthens his argument that a transfer with its inherent risks of property damage can qualify as a an adverse action. *Response* at 26. Second, Plaintiff cites his own statement that Defendants made "antagonistic statements" at the time of the transfer and "refused to seal his property" resulting in the damage to his typewriter, television, and other items. *Id.*

Plaintiff has stated Defendants confiscated his medicine and deliberately destroyed and misplaced his property in retaliation for asserting his legal rights. Aside from my finding that the events surrounding the transfer can establish retaliatory activity, the withholding of prescribed medicine and the destruction and misuse of his personal property constitutes an adverse action. *Walker v. Bain,* 257 F.3d 660, 663–64 (6th Cir. 2001)(confiscation of legal

-12-

papers and other items constitutes an adverse action); *Bell v. Johnson*, 308 F.3d 594, 597-604 (6th Cir. 2002)(confiscation of medical diet snacks and legal papers satisfies second requirement of a retaliation claim). As discussed above, a question of fact remains as to whether a causal connection exists between the protected conduct and the adverse action.

### C. The Retaliation Claim Regarding the Minor Misconduct Ticket

Defendants argue that the minor misconduct ticket issued for leaving a wet coat on a chair does not constitute an adverse action for First Amendment purposes. *Defendants' Brief* at 7-8 (*citing Plovie v. Jackson,* 2006 WL 2850579, *5 (W.D. Mich October 3, 2006) ("In the opinion of the undersigned, the four minor misconduct tickets could not possibly deter a person from ordinary firmness from engaging in protected conduct such as filing grievances or lawsuits").[1] They note further that upon Gause's guilty finding, Plaintiff received only counseling and reprimand. *Id.* at 8. In response, Plaintiff argues that "a genuine issue of material fact with respect to" whether his actions violated a housing rule, the legitimacy of the ticket, and "the state of mind of Defendants." *Id.* at 21.

The claims regarding the misconduct ticket are not subject to summary judgment. First, the Sixth Circuit noted that a question of material fact existed "as to whether Gause had exonerated another inmate who had been charged with the same infraction as Campbell." *Docket #101* at 10. Second, this Court found previously that there is a question of fact as

---

[1]

In *Plovie,* the Court noted that the plaintiff's retaliation claim was undermined by the fact that the first two minor misconduct tickets were issued before the plaintiff engaged in the protected conduct.

-13-

to whether the issuance of an allegedly non-legitimate minor misconduct ticket resulting in a written reprimand could constitute an adverse action. *See Docket #40* at 14. "[T]he question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell, supra,* 308 F.3d 594, 603 (6th Cir. 2002)(citing *Thaddeus-X,* 175 F.3d at 398). "Thus, unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* For purposes of the present motion, Plaintiff has presented a question of fact as to whether the minor misconduct ticket, issued in retaliation for his previous legal activity, was another link in a chain of retaliatory actions occurring within the course of one month.

### D.  The Civil Conspiracy Claims

Defendants contend that Plaintiff's claim of a civil conspiracy to deprive him of his civil rights is "conclusory." *Defendants' Brief* at 10.  They argue that Plaintiff's inability to establish the underlying claim of retaliation defeats his claim that Defendants' conspired against him.  *Id.*  Plaintiff responds that "overwhelming" evidence supports the conspiracy claim.  *Response* at 28.  He claims that Defendants "worked in conjunction" to (1) "issue an unwarranted misconduct ticket" and failed to respond or deny his appeals, (2) transfer him "on the exact same day Booker denied the Step Two grievance, and, (3) "Bragg, Conyers, Dye, and Powell were seen together collectively" rifling through Plaintiff's belonging prior to their damage or disappearance.  *Id.*

Plaintiff's allegations of conspiracy are construed pursuant to 42 U.S.C. § 1985(3),

-14-

which "prohibits a conspiracy 'for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.' " *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir.2005); 42 U.S.C. § 1985. To maintain a cause of action under § 1985, "one must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Radvansky*, 395 F.3d at 314 (6th Cir.2005) (internal citations omitted).

As to the claim of conspiracy, the Sixth Circuit held that non-defendant Lisa Jones' testimony that she was probably responsible for the transfer was undermined by (1) evidence that Defendant Powell pre-cleared Plaintiff's transfer, and, (2) Jones' acknowledgment that both Booker and Powell were authorized to request the transfer of an inmate. *Docket #101* at 8-9. By itself, the Sixth Circuit's determination stands at odds with Defendants assertion that there is "no evidence that [they] conspired to violate Plaintiff's rights."

While I do not agree that the evidence of a conspiracy by Defendants is "overwhelming," a question of fact remains. Dye, an RUO with a history of verbal conflicts with Plaintiff, issues a minor misconduct ticket for actions for which others had not received tickets. Gause found him guilty although she had stated in an earlier meeting that hanging a wet coat on a chair was permissible. When Plaintiff protested the guilty finding, Gause

allegedly challenged him to appeal the determination, referring to his reputation as a "legal beagle" first earned when he previously grieved her in an unrelated matter.

Although Plaintiff challenged the guilty finding, Steward declined to adjudicate the appeal.  Notably, on April 20, 2007, 11 days after Plaintiff filed a grievance against Powell, Gause, and Dye, Powell signed a medical release, clearing the way for Plaintiff's transfer despite the evidence showing that Plaintiff did not request a transfer.  On the day of the transfer, Plaintiff was taunted by Dye, Bragg (whom he had grievanced in the past), and Conyers. In the presence of Bragg and Conyers, Dye stated that she was going to "fix [his] legal beagle ass."  Plaintiff states that Dye and Conyers confiscated his medication on the pretext that it was "expired" although the medication had been recently prescribed.  Plaintiff states that Dye, Bragg, Conyers, and Powell unpacked his carefully packed containers and left his belongings "sprawled out on the floor." Plaintiff testified that Defendant  Ducett (NFR's property officer) and Defendant Snipes deliberately shipped his belonging to another facility resulting in a 10-day delay in receiving his belongings.  Plaintiff testified that upon receipt 10 days later, his personal belongings were broken, in disarray, or missing.  Because Defendants' post-appeal motion for summary judgment offers no evidence rebutting the evidence of a conspiracy, this claim is not subject to summary judgment.

### E.  The Eight Amendment Deprivation of Medication Claims

Defendants also revisit their argument that Plaintiff cannot show a violation of his Eighth Amendment rights. *Defendants' Brief* at 10-14.  They note that following Plaintiff's

transfer, he immediately went to health care and arranged for his medications to be reordered. *Id.* at 12. They argue that Plaintiff's brief deprivation of his prescribed medicine is not sufficiently serious to establish an Eighth Amendment claim. *Id.* at 13. In response, Plaintiff contends that the deprivation of blood pressure, cholesterol, and asthma medications for three to five days after his transfer resulted in physical, mental, and emotional injury. *Id.* at 30.

While the Sixth Circuit upheld the dismissal of the claim that Plaintiff was denied personal hygiene products, the evidence shows that Plaintiff was deprived of his prescribed high blood pressure, cholesterol, and asthma medication for three to five days after the transfer. The Sixth Circuit found that summary judgment was inappropriate given Plaintiff's report of "chest pains, spiked blood pressure, bronco spasms, migraine headaches, and dizziness." *Docket 101* at 10.

Consistent with my earlier finding, the evidence presented creates a question of fact as to whether Plaintiff can establish both the objective and subjective prongs of an Eighth Amendment claim. *Docket #40* at 10-13 (*citing Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2002). ; *Munn v. Toney*, 433 F.3d 1087, 1089 (8th Cir.2006) (claimant's "headaches, cramps, nosebleeds, and dizziness" caused by the failure to monitor his blood pressure qualifies as a "physical injury" under § 1997e(e)); *Baker v. Wilkinson*, 635 F.Supp.2d 514, 522 (W.D.La.2009) (prisoner's statement that untreated "internal hernias hurt sometimes"

-17-

created "genuine issues of material fact" as to whether he experienced a physical injury)(internal citations omitted).   Plaintiff's statement that he experienced chest pains, spiked blood pressure, broncospasms, migraine headaches, and dizziness after Defendants confiscated his prescription medicine states a "physical injury."   The evidence showing that Plaintiff was deliberately deprived of his prescription drugs for several days, by itself, is more than sufficient to plead the "deliberate indifference" required for an Eighth Amendment claim. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2002); *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Wolfe v. Horn*, 130 F.Supp.2d 648, 652–653 (E.D.Pa.2001)("abrupt termination of prescribed hormonal treatments by a prison official and failure to treat ... severe withdrawal symptoms or after-effects," could constitute deliberate indifference)(internal punctuation and citations omitted).   Accordingly, the Eighth Amendment claim against Defendants Dye and Conyers are not subject to summary judgment.

### F.  Qualified Immunity

Finally, Defendants argue that even assuming the presence of constitutional violations, they are entitled to qualified immunity because the rights forming that bases of Plaintiff's claims, *i.e.,* minor misconduct ticket, transfer, temporary deprivation of medication were not clearly established.  *Defendants' Brief* at 17 (*citing Carver v. City of Cincinnati,* 474 F.3d 283, 287 (6th Cir. 2007).   In response, Plaintiff notes that this Court previously found that the alleged constitutional violations "were clearly established at the time of the April, 2007

-18-

events." *Response* at 31 (*citing Docket #40* at 17-18).

Defendants' present argument that the rights in question were not clearly established is without merit. "The prohibition on First Amendment retaliation is clearly established, and a reasonable prison official would know it is illegal to take adverse action against a prisoner in retaliation for complaints." *Sweezer v. Scott*, 2015 WL 666831, *7 (E.D.Mich. January 13, 2015)(Tarnow, J.)(*citing Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996)). The right to be free from deliberate indifference in violation of the Eighth Amendment is likewise well established. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir.1992).

Plaintiff is correct that this Court found previously that the constitutional rights in question are well established. *See Docket #40* at 18 (*citing Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007)(issuing a misconduct ticket in retaliation for protected activity is an "adverse action"); *Siggers-El v. Barlow*, 412 F.3d 693, 703 (6th Cir. 2005)(foreseeable adverse consequences resulting from a transfer could deter an individual of ordinary firmness); *Bell, supra*, 308 F.3d at 604 -607 (confiscation of legal papers and other property constitutes adverse action); *Farmer v. Brennan*, 511 U.S. at 834, 114 S.Ct. 1970; *Caldwell*, 968 F.2d at 602 (Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment). Accordingly, Defendants' argument that they are entitled to qualified immunity should be rejected.

### III.   CONCLUSION

I recommend that Defendants' motion for summary judgment [Docket #123] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: February 7, 2017

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on February 7, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager